UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MORIAH AHARON;
JORDAN G. KUPPINGER, M.D.;
DAMON J. DETESO, M.D.;
ROSANNA CARUSO; and
CHRISTOPHER PAYTON, each on
behalf of themselves, and all those
similarly situated,

Plaintiffs,

v.

CHINESE COMMUNIST PARTY; and
PEOPLE'S REPUBLIC OF CHINA,

Defendants.
_____/

CASE NO. _____
CLASS ACTION
JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiffs, MORIAH AHARON, JORDAN KUPPINGER, M.D., DAMON J. DETESO, M.D., ROSANNA CARUSO, and CHRISTOPHER PAYTON (collectively, "Named Plaintiffs"), on behalf of themselves and all those similarly situated, by and through their undersigned counsel, hereby sue the CHINESE COMMUNIST PARTY ("CCP") and the PEOPLE'S REPUBLIC OF CHINA ("PRC") (collectively "Defendants"), for damages, and further allege as follows:

### INTRODUCTION

1. This is a class action brought by the Named Plaintiffs, representing doctors, nurses, paramedics, EMTs and other front-line medical care workers in the United States and State of Florida, for damages suffered by them and putative class members as a result of Defendants hoarding and stockpiling Personal Protective Equipment ("PPE"),

CASE NO._____

and forbidding factories located in China, including those owned by U.S. corporations, from exporting PPE to the United States.

2. The world is suffering the devastating impacts of the Coronavirus/COVID-19 pandemic, with worldwide cases surpassing the 1.3 million mark, and the exponentially rising death toll in the United States alone surpassing 10,000 as of April 6, 2020. The virus's epicenter in late 2019 was Wuhan, China, and because of the Defendants' deliberate and egregious acts of concealment for their economic self-interest, COVID-19 quickly spread throughout Asia, Europe and, North America.

3. On the front line of our nation's response to the effects of this deadly pandemic are the nearly 4,000,000 doctors, nurses, medical technicians, paramedics, and EMTs who are faced with severe shortages of PPE. These shortages can be directly traced to the actions of Defendants.

4. The conduct of Defendants has caused injury and incalculable harm to Named Plaintiffs and putative class members, and such injury and harm will only multiply in coming days and weeks. The Defendants' conduct has caused and will continue to cause personal injuries and deaths, as well as other damages.

**PARTIES**

5. MORIAH AHARON, a resident of Palm Beach County, Florida, is an intensive care unit nurse who has been injured and damaged by Defendants' conduct, as described herein, and is otherwise *sui juris*.

6. JORDAN G. KUPPINGER, M.D., a resident of Palm Beach County, Florida, is a hospital doctor who has been injured and damaged by Defendants' conduct, as described herein, and is otherwise *sui juris.*

CASE NO._____

7. DAMON J. DETESO, M.D., a resident of Saratoga County, New York, is a hospital doctor who has been injured and damaged by Defendants' conduct, as described herein, and is otherwise *sui juris.*

8. ROSANNA CARUSO, a resident of Bergen County, New Jersey, is a surgical technologist who has been injured and damaged by Defendants' conduct, as described herein, and is otherwise *sui juris*.

9. CHRISTOPHER PAYTON, a resident of Monongalia County, West Virginia, is a hospital registered nurse, who has been injured and damaged by Defendants' conduct, as described herein, and is otherwise *sui juris*.

10. Two of the Named Plaintiffs have tested positive for COVID-19, while the others are awaiting results.

11. Putative class members ("class members") are those individuals and entities similarly situated to Named Plaintiffs, and will number in the hundreds of thousands, if not millions.

12. The Chinese Communist Party ("CCP") is the ruling political party of China, and is legally distinct from the PRC. It is not a foreign state, but an entity that operates throughout China, and has chapters all over the world, including in many U.S. states and on many U.S. college and university campuses.

13. The People's Republic of China ("the PRC"), a foreign state, is the world's most populous country and is the third largest country by area.  It is also the largest manufacturer of PPE.  It is ruled by the CCP.

CASE NO._____

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005 (CAFA) and 28 U.S.C. § 1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, there exists minimal diversity between parties, and there are millions of putative class members.

15. This Court has further jurisdiction under the Foreign Sovereign Immunities Act (FSIA) of 1976, 28 U.S.C. §§ 1602 *et seq*., and particularly the exceptions of § 1605(a)(5) (for money damages for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious acts or omissions of the PRC, or of any official or employee of PRC while acting within the scope of his office or employment); and § 1605(a)(2) (for an act outside the territory of the United States in connection with a commercial activity of the foreign state that causes a direct effect in the United States).

16. There is no "discretionary acts" exception to jurisdiction under the FSIA, as Defendants have acted clearly contrary to the precepts of humanity, have failed to warn of a known danger, and/or have acted in a manner that is prohibited under the internal laws of the PRC.

17. This Court has jurisdiction over the CCP and the PRC because they have committed tortious acts within the United States and Florida, and within this District, and have sufficient contacts in Florida and this District to render the exercise of jurisdiction by this Court permissible.

CASE NO._____

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Named Plaintiff's and class members' claims occurred in this District.

## GENERAL ALLEGATIONS

*The Outbreak of COVID-19*

19. As of April 6, 2020, there are over 1,343,000 confirmed worldwide cases, and nearly 75,000 deaths, and even larger number of as yet undiagnosed cases. These numbers are expected to continue to rise exponentially in the coming days and weeks.

20. As of April 6, 2020, the United States has the highest number of confirmed cases (367,000), and a quickly rising death toll that has surpassed 10,871. These numbers are expected to rise exponentially in the coming days and weeks.

21. Defendants, acting from their own economic self-interest and protection of their place as an economic super-power, actively concealed the outbreak of COVID-19 in its early stages, purposely underreported cases, and failed to contain the outbreak despite knowing the seriousness of the situation.

22. Among other acts and omissions demonstrating their active concealment, Defendants:

   a. Censored doctors in late December 2019 and early January 2020 from speaking about the outbreak and its dangers.

   b. Even after the first death on January 9th, continued to downplay the dangers and assured the public that the situation was not serious and that everything was under control.

    c. Took 17 days from the time Chinese researchers discovered the COVID-19 genome sequence to report the findings to their world-wide peers.

    d. Knowing COVID-19 was spread human to human by January 3rd, told the public otherwise, and did not confirm the ease of human to human transmission until January 20th, after the virus had already spread beyond China.

    e. Failed to direct government officials to establish containment measures until it was too late, despite knowledge of the need to start sooner.

    f. Allowed Wuhan's leaders to hold a public dinner for over 40,000 families on January 18, as part of Chinese New Year celebrations, despite knowing the ease of human to human spread of the virus.

23. Defendants were obligated under International Health Regulations ("IHRs") (a treaty that China has signed and is obligated to uphold) to promptly and timely report accurate numbers and other information to the World Health Organization ("WHO") when they learned of the lethal nature of the virus, and failed to do so.

24. Moreover, international health and law experts are agreeing that Defendants' early handling of the outbreak and their failures to report to the WHO have breached Articles Six and Seven of the IHRs. Because of these failures and breaches, a pandemic was created. They include:

    a. Failure to disclose to the WHO the data that related to the ease of human to human transmission for three weeks.

    b. Giving the WHO false information about the infection rate in the first eleven days of January 2020.

    c. Failing to deter and shut down the sources of potential animal to human virus pathways, and instead actively participating in and allowing the exotic animal trade and "wet markets" to flourish (a breach of Article 12 of the International Covenant on Economic, Social, and Cultural Rights).

    d. Allowing millions of people to leave Wuhan and Hubei Province, while knowing the dangers, and before imposing the January 23, 2020 lockdown.

**The U.S. Experience with COVID-19 So Far**

25. The exponential rise in cases, even as a majority of Americans now live under "shelter in place" type orders, along with the virus and deaths touching the rich, famous, and poor alike, demonstrates that COVID-19 spreads easily and rapidly.

26. Those who become symptomatic feel cold and flu like symptoms, and too many of these symptomatic cases rapidly turn into serious cases of respiratory distress, requiring emergency care and respirators.

27. Co-morbidities, such as advanced age, hypertension, obesity, diabetes, and immune disorders, increase the risk of serious infection and death.

28. The nation's hospitals in places like New York, a current hotspot, are already well beyond capacity and unable to provide proper care to all patients who need it. Morgues and funeral homes are running out of room for the deceased. The New York Times reported on April 6, 2020 that New York City may have to resort to temporary mass graves to keep up.

29. Hospitals and major cities in other states, such as Florida, will face the same fate within the coming weeks, when they, too, become hotspots, as the modeling of the outbreak shows. Florida is especially susceptible due to its substantial elderly population.

CASE NO._____

***The Route of Transmission***

30. As the World Health Organization has reported, COVID-19 is believed to be primarily transmitted "between people through respiratory droplets and contact routes." The transmission occurs when a person is within approximately 3 to 6 feet of someone who is experiencing respiratory symptoms (*e.g.*, coughing or sneezing) and becomes at risk of having their mouth, nose, and eyes (mucous membranes) exposed to infectious respiratory droplets. There is also a risk of transmission when those respiratory droplets end up on surfaces, including clothing and objects such as stethoscopes and thermometers, where they can survive for hours, and a person can touch those surfaces and then touch their eyes, nose, or mouth, and become infected.

31. Airborne transmission remains a possibility and this possibility, according to the WHO, could be exacerbated in a medical environment, because treating the more serious symptoms of COVID-19 involves procedures which can generate aerosols, such as: endotracheal intubation; bronchoscopy; open suctioning; administration of nebulized treatment; manual ventilation before intubation; turning an infected patient to the prone position; disconnecting an infected patient from the ventilator; non-invasive positive-pressure ventilation; tracheostomy; and cardiopulmonary resuscitation.

***The Front-Line Medical Providers at Serious Risk***

32. Compounding these issues is the fact that there is not enough PPE for the front-line doctors, nurses, medical technicians, paramedics, and EMTs (collectively "medical providers") who must risk their lives, and their families' lives, to treat the high number of serious COVID-19 cases that are overtaxing the nation's medical infrastructure.

CASE NO._____

33. PPE consists of medical grade face masks (such as the N95 mask), face and eye shields, and other protective garments and accessories that prevent the respiratory droplets or aerosolized virus from reaching the eyes, nose and mouths of the medical providers.

34. The stories are legion in the media that medical providers are having to improvise PPE and re-use PPE that is meant for one time or limited use, or to simply go without proper gear.

35. Medical providers are being forced to self-quarantine from their families, either staying away from their homes, or in some cases, sleeping alone in tents or in their vehicles, to keep their families safe.

36. Medical providers are already being overworked by the virus response, and many must also suffer the stress and loss of support from those closest to them, while their spouses and children are also denied their loved ones.

37. For the purposes of this Complaint, medical providers are those providing in-person healthcare services in hospitals and other urgent care settings (including medical offices and improvised hospital settings), and includes paramedics and emergency medical technicians (EMTs). The term "doctors" includes, but is not limited to, surgeons, physicians, residents, and attending physicians, as well as interns in teaching hospitals. The term "nurses" includes, but is not limited to, registered nurses, licensed practical nurses, and certified nursing assistants. The term "medical technicians" includes, but is not limited to, respiratory and similar therapists, radiology technicians, surgical technicians, EKG technicians, and patient care technicians — essentially those who assist other professionals in hospital settings.

CASE NO._____

***China's Deliberate Hoarding of PPE Is Causing Direct Harm to Medical Providers***

38. On April 3, 2020, the New York Times updated an article by Keith Bradsher and Liz Alderman: *The World Needs Masks. China Makes Them, but Has Been Hoarding Them.* https://www.nytimes.com/2020/03/13/business/masks-china-coronavirus.html. The article highlights China's concerted and deliberate efforts to both buy up as much of the world's inventory of PPE and respirators, but also to prevent its factories from exporting PPE, just as they knew the dangers, but had still failed to tell the rest of the world.

39. That article, and others in recent days, have included statements to U.S. officials from executives at U.S. manufacturers 3M and Honeywell — who manufacture in China —that the Defendants began blocking their exports of N95 respirators, booties, gloves and other PPE and medical supplies produced by their factories in China, starting in early January.

40. At the same time, U.S. and administration officials report, based on data from China's own customs agency, that China began "cornering the market" on PPE, importing 2.46 billion pieces of "epidemic prevention and control materials" between January 24th and February 29th. The items included more than 2 billion masks and more than 25 million "protective clothing" items, that came from countries in the European Union, Australia, Brazil and Cambodia.

41. Thus, just as the world was beginning to see the danger of the coming pandemic, China — which already knew it had actively concealed the dangers of the virus from the world — was hoarding the world's supply of PPE, including gloves, goggles, and masks, through these massive increased purchases. And at the same time China,

CASE NO._____

already the world's largest PPE manufacturer, was preventing any exports from factories located there, including those owned by U.S. corporations.

42. This effective control of the market means they can now charge higher prices for the PPE that is so desperately needed, because of a pandemic they created. This barbaric posture is best summed up by a report by Barnini Chakraborty on April 7, 2020, of Fox News, and picked up by media outlets around the world that, China is actually making utterly devastated Italy *pay for masks it had donated to China for the Wuhan response*. *See* https://www.foxnews.com/world/china-italy-coronavirus-supplies-buy-back.

43. These deliberate and egregious acts, or at least negligent acts, have caused the deaths, infections, and other physical harms of medical providers throughout the world and within the United State and Florida, who have lacked proper and adequate PPE due to Defendants' conduct.

44. Any condition precedent to the filing of this lawsuit has been satisfied, met, and/or waived.

## CLASS ACTION ALLEGATIONS

45. The Named Plaintiffs assert National and Florida classes pursuant to Rules 23(a), (b)(1), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Defendants for whom they have standing. The Named Plaintiffs define the National Class as follows:

> All medical providers, as defined herein, in the United States who have been unable to procure proper or adequate PPE, treated COVID-19 infected patients, and suffered injury, damage, and loss as a result.

And Plaintiffs AHARON and KUPPINGER define the Florida Sub-Class as follows:

>All medical providers, as defined herein, in the State of Florida who have been unable to procure proper or adequate PPE, treated COVID-19 infected patients, and suffered injury, damage, and loss as a result.

46. Excluded from the Classes are the following: (1) the Defendants, and any parent, subsidiary or affiliate organizations, and the officers, directors, agents, servants, or employees of same, and the members of the immediate family of any such person; (2) all persons who timely opt out of this proceeding; (3) all persons who have given valid releases releasing Defendants from the claims asserted in this Complaint; (4) all persons who, prior to the filing of this Complaint, have filed a non-class action claim against the Defendants (or any of them) for the claims asserted in this Complaint; and (5) the judge(s) to whom this case is assigned, their employees and clerks, and immediate family members.

47. The Classes are sufficiently numerous such that the joinder of all members of the Classes in a single action is impracticable. According to recent statistics, there are approximately 2.2 million nurses working in hospital and medical settings, nearly a million licensed physicians, over 350,000 paramedics and EMTs, and over 250,000 medical technicians working in the United States. A substantial number of these persons, if not a majority, have been or will in the immediate future be affected by Defendants' wrongful conduct.

48. There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class and/or Subclass. Among these common questions of law and fact are the following:

>a. Whether Defendants' tortious conduct was intentional, negligent, and/or reckless;

    b. Whether Defendants' conduct, as described herein, constituted a commercial activity outside the U.S. that had a direct effect within the U.S.;

    c. Whether Defendants' conduct was clearly contrary to the precepts of humanity;

    d. Whether Defendants' conduct violated established laws within the PRC;

    e. Whether Defendants failed to warn of an imminent danger they knew or should have known about;

    f. Whether Defendants prevented their domestic PPE manufacturing facilities, including those owned by U.S. corporations, from exporting PPE; and

    g. Whether Defendants purchased much of the world's inventory of PPE in order to "corner the market," just as the severity of the pandemic was becoming known.

49. The claims of the Named Plaintiffs are typical of the claims of each member of the Classes and Sub-Classes in that, among other issues:

    a. the Named Plaintiffs' claims arise from the same course of conduct of Defendants giving rise to the claims of other class members;

    b. the claims of the Named Plaintiffs and each member of the Class are based upon the same legal theories;

    c. the Named Plaintiffs and each member of the Classes have an interest in prevailing on the same legal claims;

    d. the types of damages incurred by the Named Plaintiffs are similar to those incurred by the other class members;

    e. the defenses asserted by Defendants will be very similar, if not identical, as to all Named Plaintiffs and class members.

50. Named Plaintiffs are adequate representatives of the Classes in which they participate because, together with their legal counsel, each will fairly and adequately protect the interests of Classes. Named Plaintiffs and all class members have a similar, if not identical interest in obtaining the relief sought. Proof of the claims of the Named

Plaintiffs will also prove the claims of the Classes. Named Plaintiffs are not subject to any unique defenses. Named Plaintiffs have no known conflict with the Class or Subclass and are committed to the vigorous prosecution of this action.

51. The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving such widespread harm. Counsel will fairly and adequately protect the interests of the Classes.

52. The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the Classes; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other class members who are not parties to the individual adjudications, or would substantially impair or impede their ability to protect their interests.

53. Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3) in that: (1) a class action is superior in this case to other methods of dispute resolution; (2) the class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights; (3) it is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected class members would protect their rights on their own without this class action case; (4) the disparity between the resources of Defendants and class members would make prosecution of individual actions a financial hardship on class members; (5) the prosecution of separate actions by individual class members, or the individual joinder of

CASE NO._____

all class members is impractical and would create a massive and unnecessary burden on the Court's resources; and (6) Management of the class will be efficient and far superior to the management of individual lawsuits.  Moreover, currently, the undersigned counsel is unaware of any other pending litigation regarding this controversy with respect to the claims asserted here.

54. The issues particularly common to the class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

55. Named Plaintiffs have retained the above counsel to represent them in this lawsuit, and are obligated to pay said counsel reasonable attorneys' fees provided recovery is obtained.

**COUNT I – NEGLIGENCE**
(Against Each Defendant)

56. Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 55, as if fully set forth herein, and further allege:

57. Defendants had a duty to medical providers, as defined herein, including Named Plaintiffs and class members in the United States, to not act negligently in their restriction of exports of PPE produced in China and in their procurement of the world's inventory of PPE, during the time they knew of the dangers of the Coronavirus, and the risk of a worldwide and deadly pandemic, such that their actions were unreasonable and caused unnecessary harm.

58. Stated another way, Defendants' conduct with regard to the worldwide and Chinese domestic supplies of PPE created a foreseeable zone of risk that poses/posed

15

a general threat of harm to others, including Named Plaintiffs and class members, such that a common-law legal duty arises to ensure the Defendants' conduct is/was carried out reasonably.

59. Moreover, Defendants themselves created the foreseeable zone of risk by their hoarding conduct, and it was unreasonable.

60. Defendants' duty here is nondelegable, because the responsibility here is so important to the world community, including the Named Plaintiffs and class members, that Defendants cannot shift the duty to third parties.

61. The standard of care is the reasonable or ordinary care that a prudent actor would perform in similar circumstances to avoid injury to others.

62. Defendants breached their duty to Plaintiffs and class members by, among other breaches:

   h. Preventing factories in China, including those owned by U.S. corporations, from exporting PPE during the time Defendants knew of COVID-19's particular dangers and the propensity for a deadly pandemic; and

   i. Buying up the inventory of PPE around the world to "corner the market" on PPE, during the time Defendants knew of COVID-19's particular dangers and the propensity for a deadly pandemic.

63. As a direct and proximate result of Defendants' breaches as described herein, Named Plaintiffs and class members have been injured and harmed, and have suffered damages and economic harms, and seek actual, special, and compensatory damages.

CASE NO._____

**COUNT II – INTENTIONAL TORTS OF TOXIC BATTERY AND CIVIL ASSAULT**
(Against Each Defendant)

64. Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 55, as if fully set forth herein, and further allege:

65. Defendants through their active concealment of the dangers of COVID-19, set in motion a virus that, in conjunction with their intentional acts of keeping Named Plaintiffs and class members from receiving proper or adequate PPE, allows/allowed that virus to touch Named Plaintiffs and class members in a harmful and offensive manner, infecting them.

66. Defendants acted with the intent to keep PPE out of the U.S. marketplace and away from Named Plaintiffs and class members, and/or did so with the substantial certainty that the harm would occur,

67. Alternatively, Defendants' conduct, as described herein, put Named Plaintiffs and class members who did not/do not become infected with the virus, in fear of the imminent toxic battery described herein.

68. Defendants' intent for either tort is transferable to the other tort.

69. As a result of Defendants' commission of both the toxic battery and civil assault, Named Plaintiffs and class members have been injured and harmed, and seek nominal, actual and compensatory damages.

**COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
(Against Each Defendant)

70. Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 55, as if fully set forth herein, and further allege:

CASE NO._____

71. Due to the negligence described herein, Named Plaintiffs and class members have suffered discernable physical manifestations and injuries of trauma from the negligent conduct, including, but not limited, to physical pains, headaches, anxiety, and insomnia.

72. These physical injuries and manifestations have been directly caused by the psychological trauma suffered due to Defendant's egregious conduct and its effect on themselves and their loved ones.

73. Named Plaintiffs and class members have been in close proximity to the negligent conduct causing their injuries.

74. As a direct and proximate result of Defendants' conduct as described herein, Named Plaintiffs and class members have been injured and harmed, and have suffered damages and economic harms, and seek actual, special, and compensatory damages.

**COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(Against Each Defendant)

75. Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 55, as if fully set forth herein, and further allege:

76. As an alternative to the negligence described herein, Defendants acted intentionally and/or recklessly in the manner described herein, and knew or should have known that emotional distress would likely result from their conduct.

77. Defendants' conduct, as described herein, was outrageous, going beyond all bounds of decency, and is utterly intolerable in a civilized world.

CASE NO._____

78. Defendants' conduct has caused severe emotional distress to the Named Plaintiffs and class members.

79. As a direct and proximate result of Defendants' intentional and reckless conduct, as described herein, Named Plaintiffs and class members have been injured and harmed, and have suffered damages and economic harms, and seek actual, special, and compensatory damages.

## DEMAND FOR JURY TRIAL

Named Plaintiffs, on their own behalf and on behalf of the putative class members, demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, MORIAH AHARON, JORDAN G. KUPPINGER, M.D., DAMON J. DETESO, M.D., ROSANNA CARUSO, and CHRISTOPHER PAYTON, individually and as Representatives, demand judgment against Defendants, and pray for relief as follows:

a. Certification of the Class and Sub-Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiffs as representatives of the respective Class and Sub-Class and their undersigned counsel as Class counsel;

b. An order requiring that Defendants pay compensatory and other damages to Plaintiffs and the class members, for their economic and non-economic damages identified herein, to the full extent permitted by the law;

c. An order awarding all damages allowed by any governing statutes;

d. Statutory pre-judgment and post-judgment interest on any amounts awarded;

CASE NO._____

    e.    Costs and expenses in this litigation, including, but not limited to, expert fees, filing fees, and reasonable attorneys' fees; and

    f.    Such other relief as the Court may deem just and proper.

Dated this 7th day of April, 2020.

**THE LAW OFFICES OF**
**BERMAN & BERMAN, P.A.**
P.O. Box 272789
Boca Raton, FL 33427
Telephone: (561) 826-5200
Fax: (561) 826-5201

By: <u>/s Matthew T. Moore</u>
Matthew T. Moore, Esq.
Fla. Bar No. 70034
Primary: service@thebermanlawgroup.com
Secondary: mmoore@thebermanlawgroup.com

Vincent J. Duffy, Esq.
Fla. Bar No. 82151
Primary: service@thebermanlawgroup.com
Secondary: vduffy@thebermanlawgroup.com