UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MORIAH AHARON, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CHINESE COMMUNIST PARTY, et al., <br><br> Defendants. | <br><br><br><br><br><br> Civil Action No. 9:20-cv-80604-RKA |

**DEFENDANT PETROCHINA'S OPPOSITION TO PLAINTIFFS'
MOTION TO REOPEN CASE, FOR SCHEDULING CONFERENCE, AND
FOR RELIEF FROM NEED TO FILE MONTHLY STATUS REPORTS**

Defendant PetroChina International (America), Inc. ("PetroChina") respectfully submits this Opposition to Plaintiffs' Motion to Reopen Case, for Scheduling Conference, and for Relief from Need to File Monthly Status Reports (the "Motion" or "Mot.") [D.E. 43].[1] For the reasons that follow, the Motion should be denied.

**PRELIMINARY STATEMENT**

Plaintiffs' Motion seeks to accelerate its case against PetroChina to the initial discovery stage—and resolve its case against the remaining two defendants by default judgment—without having exhausted the required procedural mechanisms to ensure all defendants are properly served in the first place. Plaintiffs' Motion puts the cart before the horse and is premature under these

---

[1] By filing this Opposition, PetroChina in no way waives any jurisdictional arguments or defenses it has to this action, and specifically reserves its rights to assert any and all arguments and defenses in future filings. PetroChina also reserves its right to assert claims in an appropriate jurisdiction related to damages caused by the filing of this suit.

circumstances. This is particularly true given that PetroChina plans to assert a personal jurisdiction defense to this action (among other defenses) because there is not a sufficient nexus between PetroChina and this forum. Moreover, the Court ordered on July 6, 2020 that "[w]hen responding to the Complaint, the Defendants shall file either a *joint motion* or separate *answers* within the time remaining for the *last-served Defendant* to respond."[2] The Court later denied Plaintiffs' motion for reconsideration of that order,[3] meaning PetroChina need not respond to the Amended Complaint until the People's Republic of China ("PRC") and the China Communist Party ("CCP," and together with PRC, the "China Defendants") are properly served.

Contrary to Plaintiffs' position, they have not effected proper service. The letter Plaintiffs received from China's Ministry of Justice invoking sovereignty and security in refusing service is not equivalent to acknowledging service and does not absolve Plaintiffs from completing their service attempts, but simply requires Plaintiffs to proceed to the next available option under the Foreign Sovereign Immunities Act ("FSIA"). Given the Court's rulings here, Plaintiffs must exhaust their attempts at service on both of the China Defendants before there is any consideration of re-opening the case as a matter of procedure and because Plaintiffs' claims against PetroChina are intertwined with their claims against the China Defendants.[4] Plaintiffs also have not met the requirements for default judgment against the China Defendants under either the Hague Service Convention[5] or the FSIA. Plaintiffs' request is therefore inefficient, impracticable, and prejudicial.

---

[2] *See* July 6, 2020 order [D.E. 17] (emphasis in original).

[3] *See* August 24, 2020 Paperless Order denying Plaintiffs' Motion for Reconsideration [D.E. 32].

[4] Despite Plaintiffs' allegations, PetroChina is an independent legal entity that is separate and unrelated to the China Defendants.

[5] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 363, 658 U.N.T.S. 169 (the "Hague Service Convention").

## ARGUMENT

**I.     It is Premature for PetroChina to Engage in Discovery Conferences with Plaintiffs Prior to Plaintiffs Completing Service Attempts on the China Defendants and Prior to Plaintiffs Finalizing the Substance of Their Lawsuit.**

In light of the procedural obstacles to moving this case forward (which are described in further detail below), it makes no sense to require PetroChina to engage in discovery conferences at this point, which will in turn trigger the requirement of a Rule 26(f) report and open the opportunity for Plaintiffs to serve written discovery requests. This is particularly true because PetroChina plans to assert a personal jurisdiction defense (among other defenses) in a Rule 12 motion. *See, e.g.*, *Zavala v. Kruse-W., Inc.*, No. 1:19-CV-00239-DAD-SKO, 2019 WL 3219254, at *2 (E.D. Cal. July 17, 2019) ("The undersigned recognized the impracticality of holding a scheduling conference in view of the motion [to dismiss] and continued the conference accordingly. [] It is equally not 'practicable' to order Defendants to participate in a Rule 26(f) conference at this stage of the proceedings.") (citation omitted). In fact, even Plaintiffs acknowledge in their Motion that "PetroChina America may propose that it be allowed to delay responding to any complaint until jurisdictional issues are resolved." Mot. at n.7. Courts also regularly grant a stay in discovery pending a motion to dismiss based on personal jurisdiction issues. *See, e.g.*, *Gillier v. Servicios Agecom*, LLC, No. CV 17-23155-CIV, 2017 WL 6994217, at *1 (S.D. Fla. Nov. 27, 2017) ("If either of the motions to dismiss based on a lack of personal jurisdiction is granted, proceeding in this forum … would be improper."). From a practical standpoint, is it not only illogical, but would be prejudicial, to require PetroChina to move forward in light of the existing case uncertainties.

II.     **Plaintiffs Have Not Exhausted their Attempts to Serve the China Defendants Under the Foreign Sovereign Immunities Act or Satisfied the Requirements for Default Judgment.**

Plaintiffs argue that "the claims against PetroChina America are not dependent on the PRC or the CCP appearing, *since there are means available for default of those Defendants*." Mot. at 2. That is incorrect. First, as a threshold matter, Plaintiffs have not exhausted the options provided under the FSIA to serve the China Defendants in light of China's invocation of Article 13 of the Hague Service Convention. Second, there are no available means for default against the PRC or CCP under either the Hague Service Convention or the FSIA based on China's invocation of Article 13.[6] Third, Plaintiffs' claims against PetroChina *are* in fact dependent on the PRC and the CCP appearing, because the emphasis of Plaintiffs' claims against PetroChina is on "civil aiding and abetting" the "tortious acts" and "Sherman Act violations" allegedly committed by the CCP and PRC. *See* First. Am. Compl. at ¶ 193–94 [D.E. 19].

   A.   *China's Invocation of Article 13 of the Hague Service Convention Does Not Excuse Plaintiffs from Satisfying the FSIA Service Requirements for Both China Defendants*

Pursuant to Rule 4(j)(1) of the Federal Rules of Civil Procedure, a "foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1). Section 1608, as acknowledged by Plaintiffs in their previous filings, requires service to be effected in one of four ways: (1) in accordance with a special arrangement service between the plaintiff and foreign state; (2) in accordance with an applicable international convention on service of judicial documents; (3) *if service cannot be made under 1 or 2*, by any form of mail to the head of the ministry of foreign affairs of the foreign state; or (4) *if service*

---

[6] As Plaintiffs have noted, Judge Cannon is currently considering similar questions as to proper service on China in *Reyes et al. v People's Republic of China et al.*, Case No. 20-cv-21008-AMC, which has similarities to the procedural history of this case.

*cannot be made under 3*, by any form of mail to the clerk of the court to the Secretary of State in Washington, D.C. to the Director of Special Consular Services, who will transmit through diplomatic channels. *See* 28 U.S.C. § 1608. Importantly, "Section 1608(a)'s service of process provisions are *explicitly hierarchal*: a plaintiff *must* attempt service in the order required by the statute." *Photos v. People's Republic of China*, No. 3:20-CV-656-K-BN, 202020 WL 6889016, at *3 (N.D. Tex. Nov. 24, 2020) (emphasis added) (citation omitted).

In Plaintiffs' July 16, 2020 filing, Plaintiffs claimed that they were attempting service under (2) above via the Hague Convention.[7] Plaintiffs have now failed to effect service according to (2) above because China has exercised its rights to refuse service under Article 13 of the Hague Service Convention and returned Plaintiffs' request. *See* D.E. 42 at 1–2 ("The specific reasons for the return are as follows:... [t]he execution of the request would infringe the sovereignty or security of the People's Republic of China (Article 13)"). Plaintiffs claim this is "the PRC and CCP [] choosing to default and flouting this Honorable Court and U.S. law," Mot. at 4, but that is not the impact of Article 13 invocation. Instead, courts consider a foreign state's invocation of Article 13 under the Hague Service Convention to be a valid basis to decline service under (2) above. *See, e.g., Zhang v. Baidu.com Inc.*, 932 F. Supp. 2d 561, 566–67 (S.D.N.Y. 2013) (holding "this case does not involve a 'failure' of the Hague Convention at all" because "China invoked its rights under the Convention itself to decline to effect service on the ground that service would infringe its 'sovereignty or security.'"). Also unavailing is Plaintiffs' argument that the China Defendants

---

[7] *See* D.E. 23 (Mot. for Reconsideration) at 4. Plaintiffs also noted that (3) above would not be possible because China opposed service by mail when it signed on to the Hague Treaty. *See id*. Several courts have acknowledged China objects to service by mail. *See, e.g. Prince v. Gov't of People's Republic of China*, No. 13-CV-2106 (TPG), 2017 WL 4861988, at *6 (S.D.N.Y. Oct. 25, 2017) ("Plaintiff also cannot rely on Article 10's allowance for service via 'postal channels' because PRC [People's Republic of China] is among the countries who have formally objected to such means of service[.]").

5

have no basis to refuse service if the subject of the suit falls within an exception to the FSIA; there must still be proper service effected to confer jurisdiction. *See Telchi v. Israel Mil. Indus., Ltd.*, No. 14-20244-CIV, 2016 WL 6027707, at *5 (S.D. Fla. Oct. 14, 2016), *aff'd*, 739 F. App'x 514 (11th Cir. 2017) ("As the Second Circuit puts it: 'In general, 'subject matter jurisdiction plus service of process equals personal jurisdiction' under the FSIA.'") (citations omitted).

Moreover, several courts have held that after a foreign state invokes Article 13 under the Hague Service Convention, the plaintiff must attempt other forms of service permitted under Section 1608 or the complaint could be dismissed. *See Bleier v. Bundesrepublik Deutschland*, No. 08 C 06254, 2011 WL 4626164, at *7 (N.D. Ill. Sept. 30, 2011), *aff'd sub nom. Korber v. Bundesrepublik Deutschland*, 739 F.3d 1009 (7th Cir. 2014) (granting Germany's motion to dismiss for insufficient service of process where Germany refused service pursuant to Article 13 of the Hague Convention and plaintiffs did not effect valid service under Section 1608 and instead sought unauthorized means of service by email); *see also Salini Costruttori S.p.A. v. Kingdom of Morocco*, 233 F. Supp. 3d 190, 195 n. 4 (D.D.C. 2017) (vacating default judgment against Morocco where "§1608(a)(2) service was rendered ineffective by Morocco's invocation of Article 13 of the Hague Convention" and plaintiffs did not attempt to effect service under Section 1608(a)(3) or (a)(4)); *Photos*, 2020 WL 6889016, at *3 (denying motion to request alternative service on People's Republic of China because after service failed under Section 1608(a)(3), the remedy was Section 1608(a)(4)). At this stage, Plaintiffs' next step should be an attempt to effect service under Section 1608(a)(4).

Importantly, the above reasoning applies to both Defendant PRC and Defendant CCP, despite Plaintiffs' incorrect contention that the CCP is not a sovereign entity and is therefore not entitled to invoke Article 13. First, it is not a function of the judiciary to determine whether a

6

foreign state properly invokes Article 13 because "Article 13 allows 'the State addressed' to refuse to comply with a request for service 'if it deems that compliance would infringe its sovereignty or security.'" *Zhang*, 932 F. Supp. 2d at 567 at 566 (citation omitted). The *Zhang* court noted "[n]othing in Article 13 limits that authority to cases brought against the state alone" and it allows China "to decline to effect service pursuant to the Convention, without regard to the parties to be served." *Id.*

Second, even if it was the Court's function, Plaintiffs are incorrect that the CCP is not covered by the FSIA. Pursuant to 28 U.S.C. § 1603, a "foreign state" is defined as "a political subdivision of a foreign state or an ***agency or instrumentality*** of a foreign state," which "means any entity—(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof … and (3) which is neither a citizen of a State of the United States … nor created under the laws of any third country." 28 U.S.C. § 1603(a) and (b). The CCP fits squarely into this definition, and Plaintiffs' citation to *Yaodi Hu v. Communist Party of China* is inapposite; there, the court did not actually analyze the issue of CCP's status under the FSIA—other than a passing assertion in *dicta* that it (along with certain Chinese government officials and an internet site) was not entitled to FSIA immunity—but instead focused on dismissing the case for failure to state a claim under the Alien Tort Statute. *See Yaodi Hu v. Communist Party of China*, No. 1:12-CV-1213, 2012 WL 7160373, at *3 (W.D. Mich. Nov. 20, 2012). In contrast, a court in this district made a specific determination that the Communist Party of Cuba, which is of a similar political nature to the CCP, is in fact an agency and instrumentality of Cuba under 28 U.S.C. § 1603. *See Saludes v. Republica de Cuba*, 577 F. Supp. 2d 1243 (S.D. Fla. 2008); *see also Chen v. China Central Television*, No. 06 Civ. 414, 2007 WL 2298360, *4,

\*6 (S.D.N.Y. Aug. 9, 2007) (holding state-owned television station was an instrumentality of the PRC and subject to the FSIA as the "mouthpiece" of the Chinese Communist Party).

For all of the reasons above and pursuant to Section 1608, Plaintiffs must still attempt method (4) under the FSIA, known as the "diplomatic channels" option, to exhaust their attempts at effecting service on **both** of the China Defendants. Notably, courts have acknowledged that "[b]ecause district courts need to be able to control their dockets … the amount of time allowed for foreign service is not unlimited." *Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005).

### B. *China's Invocation of Article 13 of the Hague Service Convention Does Not Provide a Basis for Default Judgment Under the Hague Convention or the FSIA*

It is no surprise that Plaintiffs provide no detail in their Motion as to how exactly they have satisfied the prerequisites for default judgment under Article 15 of the Hague Service Convention. The facts reveal they do not even come close. Article 15 of the Hague Service Convention allows for default judgment only where three conditions are fulfilled: (1) "the document was transmitted by one of the methods provided for in this Convention"; (2) "a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document"; and (3) "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed." *Zhang*, 932 F. Supp. 2d at 567. First, where the foreign state rejects service under Article 13 of the Hague Service Convention, service is not actually "transmitted," meaning the first requirement of Article 15 cannot be met. *See id.* ("[N]one of these three mandatory conditions has been met, as the Complaint was not 'transmitted' to Defendants at all due to China's objections under Article 13 and a 'certificate' (noting China's objections) has been received."); *see also Diz v. Hellmann Int'l Forwarders, Inc.*, 611 So. 2d 18, 20 (Fla. Dist. Ct. App. 1992) ("Second, and

8

more important, Article 15 simply cannot be employed, as it was below, to default a defendant *who is known not to have been served*.") (emphasis added). Accordingly, if the documents were never actually served because of China's invocation of Article 13, there is no way six months have elapsed since the date of transmission to satisfy (2) above.

Even if for some reason service was actually "transmitted" here (it was not due to China's invocation of Article 13), Plaintiffs would still fail to establish (3) above, as they cannot argue that "no certificate of any kind has been received." Plaintiffs admit in their Motion that "China's Ministry of Justice has formally acknowledged and formally refused to accept service of the First Amended Complaint." Mot. at 1; *see also id.* at 3 ("The letter from China's Ministry of Justice demonstrates unequivocally that the documents were accepted, acknowledged, received, and reviewed[.]"). This is not the context where Article 15 of the Hague Service Convention would apply. *See Brown v. Allen*, No. 8:09-CV-1504-T-24-EAJ, 2010 WL 11507324, at *2 (M.D. Fla. Aug. 17, 2010) ("Default judgment is an extreme measure which is normally taken when a defendant is *intentionally refusing to answer* a summons and complaint *after being served properly*, or when a defendant is intentionally concealing his whereabouts to avoid service.") (emphasis added). Therefore, Plaintiffs' assertion that they have "outright satisfied the Hague Convention or will be able to show that default has been triggered under its Article 15," Mot. at 3, is unavailing.[8]

---

[8] Also unavailing would be any attempt to argue that Plaintiffs have satisfied the requirements for default under the FSIA. Section 1608(e) requires that Plaintiffs provide "satisfactory evidence as to each element of the claims upon which relief was sought," and if the court does not consider that evidence, default cannot be entered. *See Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 950–51 (11th Cir. 1996) ("[B]ecause it appears that the district court failed to consider the requirements of 28 U.S.C. § 1608(e), we vacate the entry of the judgment against Dominicana."). To pursue default under this avenue, Plaintiffs would have to meet a high bar to establish their right to relief on their claims against the China Defendants, which clearly Plaintiffs have not even attempted to do at this stage in the litigation.

      C.      *Plaintiffs' Claims Against PetroChina Cannot Proceed Now Because They Are Intertwined with Plaintiffs' Claims Against the China Defendants*

Plaintiffs' argument that their claims against PetroChina are not dependent on the claims against the China Defendants is contrary to both common sense and the plain language of their First Amended Complaint. Plaintiffs specifically tie PetroChina's actions to those of the China Defendants repeatedly in their pleading. *See, e.g.*, First Am. Compl. at ¶ 4 ("[T]he CCP and the PRC enlisted their U.S. oil and gas subsidiary, PetroChina to help them carry out their PPE scheme."); *id.* at ¶ 147 ("These dynamics played out in the United States, as PetroChina's US corporation was one of the enlisted entities."); ¶ 154 ("PetroChina's conduct here, in concert and conspiracy with the CCP and PRC, contributed to China's unreasonable restraint of trade and monopolization in the mask and PPE market, in violation of Sections 1 and 2 of the Sherman Act."); ¶ 160 ("Among these common questions of law and fact are the following: … h. Whether PetroChina's conduct aided and abetted the CCP and the PRC in their tortious conduct…j. Whether PetroChina conspired with the CCP and PRC in violation of the Sherman Act."); ¶ 196 ("At all times material hereto, PetroChina: a. Committed the same wrongful acts of hoarding and restraining trade of PPE in concert with the CCP and/or PRC …. b. Knew that the acts of the CCP and/or PRC breached a duty of care or were illegal, and gave substantial assistance to the CCP and/or the PRC …. c. Gave substantial assistance to the CCP and/or the PRC in accomplishing the tortious and illegal results…."); ¶ 218 ("Furthermore, PetroChina acted in concert with the CCP and PRC to carry out the anti-competitive scheme, and committed overt acts in furtherance of the conspiracy…."); ¶ 219 ("***The conspiracy and agreement between the CCP and the PRC existed prior to PetroChina joining it***.") (emphasis added); ¶ 225 ("After the combination and conspiracy existed, PetroChina joined it. PetroChina then acted in concert with the CCP and PRC to carry out this unreasonable restraint of trade and commerce[.]"). Clearly, the entire crux of Plaintiffs'

Amended Complaint is an alleged conspiracy headed by the PRC and CCP, and PetroChina's role is depicted as ancillary. If service has failed against the China Defendants, Plaintiffs will not be able to move forward with their suit as pled.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied.

Dated: March 24, 2021

Respectfully submitted,

/s/ Edward Soto
Edward Soto (FBN 0265144)
edward.soto@weil.com
Pravin Patel (FBN 0099939)
Pravin.Patel@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
(305) 577-3100 (Telephone)
(305) 374-7159 (Facsimile)

*Counsel for Defendant PetroChina International (America), Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed electronically with the Clerk of the Court using CM/ECF on March 24, 2021. As such, the foregoing was served electronically upon all counsel of record.

/s/ Edward Soto
Edward Soto (FBN 0265144)
edward.soto@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
(305) 577-3100 (Telephone)
(305) 374-7159 (Facsimile)

*Counsel for Defendant PetroChina International (America), Inc.*