UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MORIAH AHARON;
JORDAN G. KUPPINGER, M.D.;
DAMON J. DETESO, M.D.;
ROSANNA CARUSO;
CHRISTOPHER PAYTON;                             CASE NO. 9:20-cv-80604-RKA
LEE ANGIOLETTI;                                 CLASS ACTION
MARIANGELLA MANNING;                            JURY TRIAL DEMANDED
LYNNORA VASQUEZ; and
REBECCA MADDEN, each on
behalf of themselves, and all those
similarly situated,

Plaintiffs,

v.

CHINESE COMMUNIST PARTY;
PEOPLE'S REPUBLIC OF CHINA; and
PETROCHINA INTERNATIONAL
(AMERICA), INC.

Defendants.
_____/

**PLAINTIFF'S REPLY TO PETROCHINA INTERNATIONAL (AMERICA)'S
OPPOSITION TO RE-OPENING THE CASE**

Plaintiffs hereby respectfully file this Reply to the opposition brief filed by Defendant PetroChina International (America), Inc. ("PetroChina") in response to Plaintiffs' Motion to Reopen the Case and for a Scheduling Conference. The gravamen of PetroChina's opposition brief is that it is premature to re-open the case, and there are additional procedural steps for service to be completed pursuant to a hierarchy in the Foreign Sovereign Immunities Act ("FSIA"). Plaintiffs now partially agree with PetroChina, and hereby reply as follows:

As stated in their Motion, undersigned and their research team have been diligently researching the complex, intertwining issues involved in serving and maintaining an action against a foreign state and foreign defendants, as part of a thirty page brief ordered by Judge Cannon in Case No. 20-cv-21108, that is due April 15, 2021 ("the April 15th Brief"). In the course of this in-depth research, undersigned is specifically addressing the issue of whether further service is futile in light of China's letter asserting sovereign immunity, or whether — as PetroChina argues in their opposition — Plaintiffs must continue their service efforts. As a result of this research, despite the seemingly inherent futility, Plaintiffs hereby partially concede and admit that they must continue and complete the procedural steps of the FSIA as to Defendants the People's Republic of China ("PRC") and the Chinese Communist Party ("CCP") before the case may proceed.[1]

However, Plaintiffs disagree with PetroChina's position that "Plaintiffs' next step should be an attempt to effect service under [FSIA] Section 1608(a)(4) [through the U.S. State Department]." (Def.'s Opposition Brief ("Opp.") at 6). A determination from the Court is needed on which next step under § 1608(a) is the proper one, and also whether assistance from the Clerk of Court is necessary.

1. **There Is Conflicting Case Law on Whether Step 3 or Step 4 of the FSIA Hierarchy Is the Proper Next Step for Service.**

As Plaintiffs and PetroChina already agree, China's letter asserting Article 13 and sovereign immunity under the Hague Convention[2] means that Plaintiffs have now been unable to

---

[1] Plaintiffs do not concede that the CCP is an organ of the PRC, as noted *infra*. That will require a later determination after full briefing on the application of the exceptions to sovereign immunity. Service needs to progress in the event the Court later disagrees as to the CCP's status.
[2] References herein to the Hague Convention (or as PetroChina called it, the "Hague Treaty") are references to: Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *done* Nov. 15, 1965, 20 U.S.T. 363, 658 U.N.T.S. 169.

serve under § 1608(a)(2), or step two, of the four-step hierarchy of service of the FSIA. 28 U.S.C. § 1608(a)(1)–(4). And as PetroChina points out, and as Plaintiffs now agree, the FSIA then *requires* plaintiffs to pursue step three (service by mail) and then, if step three is unsuccessful, *requires* Plaintiffs to pursue step four (service through the State Department). (Opp. at 4–5).³ Defendant then argues that Plaintiffs can skip step three and move right onto step four because, as they point out in a footnote, China has formally objected to service by mail under the Hague Convention, which could obviate the need for step three. (Opp. at n.7). **But** it is actually unclear whether Plaintiffs may procedurally skip step three, as their recent research for the April 15th Brief has shown, and a determination by the Court on how it would prefer Plaintiffs to proceed with service is both helpful and required.

The case law cited by PetroChina on skipping step three is not definitive. The statutory scheme that Congress adopted in § 1608(a) is one that "sets out in hierarchical order . . . methods by which '[s]ervice... **shall** be made.'" *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (U.S. 2019 (quoting § 1608(a)(emphasis added). Plaintiffs believe that a plausible interpretation of § 1608(a) is that that provision requires a plaintiff to attempt service under the step three — § 1608(a)(3), the direct mail method — before calling in the aid of the U.S. Secretary of State under step four — § 1608(a)(4), the diplomatic channel.

Indeed, the Supreme Court in its recent judgment in *Harrison* seems to suggest that each method (at least after the § 1608(a)(2) Central Authority method) may be used only after a plaintiff has attempted to serve under the prior method. Thus, the Supreme Court has said: "If service is not possible under either of the first two methods [§ 1608(a)(1) and (2)], the third

---

³ Plaintiffs also previously pointed out this hierarchy in their earlier Motion for Reconsideration, but as this Reply concedes, they have since determined that Defendant is correct that futility does not allow Plaintiffs to stop at step two. [DE 23 at 4].

3

method . . . may be used." 139 S. Ct. at 1054. And, "[f]inally, *if* service cannot be made within 30 days under § 1608(a)(3), service may be effected by sending the service packet 'by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia,' for transmittal through diplomatic channels to the foreign state.'" *Id*. (quoting § 1608(a)(4)) (emphasis added).

Plaintiffs believe that it would not be implausible to read the Supreme Court in *Harrison* to be saying that the next method becomes available only if service has not been successfully made by the prior method. Thus, the third step or the fourth (depending on where in the hierarchy of § 1608(a) a plaintiff's attempts at service have gotten to so far) would become available only after the plaintiff has attempted and failed to serve under the prior method (the second or the third, as the case may be).

When read against PetroChina's case citations, there is a tension as to whether step three is required, even where a sovereign has not allowed it under the Hague Convention. So, while Plaintiffs concede that they must complete the FSIA hierarchy, they wish to avoid any later argument that they did not proceed correctly. Moreover, pursuant to the State Department's "FSIA Checklist," step four usually proceeds by a letter/direction from the Clerk of Court, *unless* the Court directs that Plaintiffs may directly contact the State Department.[4] Thus, for either step three or four, direction from the Court will assist and is likely necessary for the process of completing service.

Plaintiffs posit that since they are now in agreement with PetroChina that additional service is necessary and that re-opening the case at this juncture is premature, that there is no

---

[4] *See* U.S. Department of State, FSIA Checklist, No. 9, *available at* https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process/FSIA-Checklist.html.

prejudice to PetroChina. Step three (if the Court determines it is required) is only an approximately thirty-day process.[5] The proper translations for step four have already been completed, and there would just need to be new sixty-day summonses issued, and the Complaint and paperwork can be submitted to the State Department. Once the service packages are sent through the diplomatic channels, the China-based Defendants will have sixty days to respond, and if they do not respond, then the FSIA is satisfied and the case may re-open and proceed.

2. **Other Matters Raised.**

Although Plaintiffs' agreement generally moots PetroChina's opposition, Plaintiffs hereby briefly address the other points raised by PetroChina:

### A. *Plaintiffs have remained diligent in their service efforts and have acted expeditiously.*

PetroChina notes the fact that the time for service cannot be infinite. Plaintiffs posit that a further limited amount of time to complete these procedural steps is appropriate. China's letter refusing service and invoking Article 13 was not received until February 26, 2021, and Plaintiffs timely notified the Court of same in their March 2, 2021 Status Report. [*See* DE 41]. The Clerk did not receive the letter and docket it until March 9, 2021. [*See* DE 42]. Plaintiffs then timely filed their Motion before the Court's prior time for service expired on March 11, 2021. [*See* DE 43].

Plaintiffs still would have been unable to move forward with the service hierarchy until receiving that letter, and still would have required extra time once China's decision was known, since it was so close to March 11, 2021. Plaintiffs have acted diligently throughout this process and will continue to act diligently to complete the procedural steps required to perfect service. Since China has expressly invoked Article 13 under the Hague Convention, steps three and/or

---

[5] *See id.*, FSIA Checklist, No. 3.

four should be ministerial. Plaintiffs will continue to file status reports to keep the Court apprised of completing the process.

### B. *PetroChina's concerns about personal jurisdiction would be addressed.*

As stated in their Motion, Plaintiffs always anticipated that PetroChina may have personal jurisdiction concerns that would need to be addressed as part of the overall jurisdictional concerns of the case. Although Local Rule 16.1 refers to a "discovery conference" and plan, a proposed scheduling report and order would necessarily, because of the FSIA implications, have to address jurisdiction. Plaintiffs assumed that any concerns of PetroChina would be addressed in that briefing, and the Parties could have agreed to propose that PetroChina's answer to the Complaint should be abated and that discovery would not begin until jurisdictional issues were satisfied, or something similar.

However, Plaintiffs disagree that all allegations against PetroChina are dependent on the appearance of the other Defendants. Plaintiffs posit that the appearance of the PRC and CCP is not necessary to maintain Counts IX and X of the Complaint. However, Plaintiffs do now still agree that the FSIA hierarchy must proceed.

### C. *FSIA concerns would be addressed in separate briefing once the case may proceed.*

As PetroChina agrees, it is also premature to address the FSIA concerns about jurisdiction under the exceptions set forth in the FSIA. *See* § 1605(a), *et seq*. Moreover, the issue of whether the CCP is a sovereign entity or not, has not been definitively addressed in U.S. Courts. Plaintiffs' Motion cited *Yaodi Hu v. Communist Party of China*, 2012 WL 7160373, at *3 (W.D. Mich. Nov. 20, 2012), (which contained a holding, not *dicta*) in support. Arguing the opposite position, PetroChina cites another unpublished case and *Saludes v. Republica de Cuba,* 577 F. Supp. 2d 1243 (S.D. Fla. 2008). *Saludes* is easily distinguishable because it concerns

CASE NO. 9:20-cv-80604-RKA

Cuba, not China, and on the face of the opinion, the Court was more interested in allowing a plaintiff to collect damages rather than fully analyzing what it means to be sovereign and what qualifies an entity to be sovereign. *See id.*

As pointed out in their Motion, Plaintiffs have argued in their Complaint that the CCP sits independently above the Chinese government, not below it, or subject to it – and therefore it is illogical to call it an "organ" of the state, as required for it to be an agent or instrumentality of the PRC under the FSIA. *See* § 1603(a), (b). An "organ" is a typically a sub-part of a greater whole, or an instrument controlled by a master. The CCP is neither. However, these are issues that must be sorted out in full briefing as contemplated under the FSIA, such as the April 15th Brief, and which will be similarly necessary here.

WHEREFORE, Plaintiffs respectfully modify their original request, and ask the Court to enter an Order: 1) directing whether step three or step four is the next step they must follow to procedurally finish service on the China based Defendants; 2) determining whether Plaintiffs may directly initiate service through diplomatic channels with the State Department; 3) allowing an appropriate and limited time for Plaintiffs to complete the procedural steps directed by the Court; and for such other relief as the Court may deem just and proper.

Respectfully submitted this 8th day of April, 2021.

> **THE LAW OFFICES OF**
> **BERMAN & BERMAN, P.A.**
> P.O. Box 272789
> Boca Raton, FL 33427
> Telephone: (561) 826-5200
> Fax: (561) 826-5201
>
> By: */s Matthew T. Moore*
> Matthew T. Moore, Esq.
> Fla. Bar No. 70034
> Primary: service@thebermanlawgroup.com

Secondary: mmoore@thebermanlawgroup.com

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
*MORIAH AHARON, et al. v. COMMUNIST PARTY OF CHINA, et al.*
CASE NO. 9:20-cv-80604-RKA

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a true and correct copy of the foregoing was filed this April 8, 2021 using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record on the service list, including the following attorneys of record.

                */s/ Matthew T. Moore*
                Matthew T. Moore, Esq.

*Counsel for Plaintiffs*

Matthew T. Moore
mmoore@thebermanlawgroup.com

The Law Offices of
Berman & Berman, P.A.
P.O. Box 272789
Boca Raton, FL 33427
Telephone: (561) 826-5200
Fax: (561) 826-5201


*Counsel for PetroChina International (America), Inc.*

Edward Soto
edward.soto@weil.com
Pravin R. Patel
pravin.patel@weil.com

Weil Gotshal & Manges
1395 Brickell Avenue
Suite 1200
Miami, FL 33131
305-577-3177
Fax: 374-7159