*UNITED STATES DISTRICT COURT*

*SOUTHERN DISTRICT OF FLORIDA*

*MIAMI DIVISION*

*CASE NO. 10-80604-CIV-RKA*


*MORIAH AHARON, ET AL.,*      .
                           . *Miami, Florida*
         *Plaintiffs,*       .
                           . *September 20, 2023*
         *v.*                  . *2:31 p.m.*
                           .
*CHINESE COMMUNIST PARTY,*     .
*ET AL.,*                          .
                           .
         *Defendants.*      .
. . . . . . . . . . . . . . . . .


- - - - -

*Transcript of Zoom Status Conference Hearing*

*had before the Honorable Roy K. Altman,*

*United States District Judge.*

- - - - -


*Proceedings recorded by mechanical stenography, transcript produced by computer.*

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)301-3276

```
APPEARANCES:

For the Plaintiffs:   Matthew T. Moore, Esq.
                      The Law Offices of Berman & Berman, P.A.
                      P.O. Box 272789
                      Boca Raton, Florida  33427

For the Defendants:   Edward Soto, Esq.
                      Pravin R. Patel, Esq.
                      Daniel P. Guernsey, Jr.
                      Weil Gotshal & Manges
                      1395 Brickell Avenue
                      Suite 1200
                      Miami, Florida  33131

Court Reporter:       Francine C. Salopek, RMR, CRR
                      Official Court Reporter
                      United States District Court
                      Wilkie D. Ferguson, Jr., U.S. Courthouse
                      400 N. Miami Avenue, Room 12-4
                      Miami, Florida 33128
                      (305)301-3276

                          -  -  -  -  -
```

| | |
|---|---|
| 1 | **WEDNESDAY, SEPTEMBER 20, 2023, 2:31 P.M.** |
| 2 | *(The Judge entered the Zoom session)* |
| 3 | THE COURT:  You ready, Fran? |
| 4 | THE COURT REPORTER:  Yes, Judge. |
| 5 | THE COURT:  All right.  Aharon, et al. vs. the Chinese |
| 6 | Communist Party, et al., 20-CV-80604. |
| 7 | Who's here for the plaintiff? |
| 8 | MR. MOORE:  Matthew Moore from Berman Law Group, Your |
| 9 | Honor. |
| 10 | THE COURT:  All right.  Good afternoon. |
| 11 | MR. MOORE:  Good afternoon. |
| 12 | THE COURT:  And who's here for the defendants? |
| 13 | MR. PATEL:  Good afternoon, Your Honor.  Pravin Patel, |
| 14 | along with my colleagues, Edward Soto and Daniel Guernsey, from |
| 15 | Weil Gotshal & Manges. |
| 16 | THE COURT:  All right.  Good afternoon. |
| 17 | We've got a class action brought by the named |
| 18 | plaintiffs representing doctors, nurses, paramedics, EMTs, and |
| 19 | other frontline medical care workers in the United States and |
| 20 | Florida, alleging "damages suffered by them and putative class |
| 21 | members as a result of defendants hoarding and stockpiling |
| 22 | personal protective equipment, PPE."  That's the complaint, ECF |
| 23 | Number 1, at page 1. |
| 24 | In July of 2020, in light of the plaintiffs' inability |
| 25 | to serve the defendants under the Hague Convention and the |

1    Foreign Sovereign Immunities Act, we removed this case from our

2    active docket and required the plaintiffs to provide status

3    reports every 30 days "regarding the status of their service

4    efforts."  That was our initial order on that issue at ECF

5    Number 18, page 2.

6           The plaintiffs have been dutifully filing status

7    reports ever since.  And I just want you to know, I have been

8    diligently reading them with a great deal of interest.  I would

9    have liked a little more verve in the status reports, but, you

10   know, one can only hope.

11          In March of 2023, the U.S. Department of State

12   informed our clerk of court that "the United States Embassy in

13   Beijing, China, transmitted the summons, First Amended Class

14   Action Complaint, and Notice of Suit to the Ministry of Foreign

15   Affairs of the People's Republic of China."  That's the letter

16   from the Department of State, ECF Number 85, at page 1.

17          Subsequently, "the U.S. Embassy in Beijing received a

18   reply from the Ministry of Foreign Affairs of the People's

19   Republic of China in the form of a diplomatic note."  That

20   ministry note said, and I quote:  "The U.S. Embassy in China

21   has delivered to the Chinese side on its involvement in the

22   COVID-19 vexatious litigation" -- I think he's talking about

23   you, Mr. Moore.

24          MR. MOORE:  I think so.

25          THE COURT:  "Which has seriously violated China's

1   national sovereignty.  The Chinese side expressed firm

2   opposition to this, refused to accept it, and returned it on

3   the spot... China does not recognize and will not participate

4   in these vexatious litigation lawsuits."  And that's page 3 of

5   the letter from our State Department.

6            The plaintiffs argue that "under the FSIA, once the

7   State Department delivers the service documents to China's

8   Ministry of Foreign Affairs and certifies the same, pursuant to

9   Section 1608(a)(4), the China-based defendants have been

10  served."  That's their motion to reopen the case, ECF

11  Number 91, at page 3.  Therefore, the plaintiffs say, "all

12  defendants have now been served and the case may proceed."

13  That's page 3 of that same motion.

14           Our one defendant who has appeared, PetroChina

15  (International) America, Inc., "disagrees that all defendants

16  have been served, but does not oppose the plaintiffs' request

17  to reopen the case."  That's their response.

18           We're not -- I'm not sure what to make of the claim

19  that service has been effectuated, but I think since both sides

20  are in agreement, it probably makes sense to reopen the case.

21           They're not going to be here, Mr. Moore.  I don't know

22  what you want to do with them.  You want to try to convince me

23  that they've been served and then, what, pursue default

24  judgment procedures against them?

25           MR. MOORE:  That would be the normal course.

1       THE COURT:  I mean, it would if I agree with you that

2   they've been served, and I honestly -- I don't know the answer

3   to that sitting here today.  I was trying to persuade you to

4   let them go and focus on the defendant who's here so that we

5   could have a regular litigation on the merits.  But, of course,

6   that's up to you.

7       MR. MOORE:  Well, I don't think that the case can

8   proceed without the PRC and the CCP.  They are a vital part of

9   our allegations and what we believe happened that caused the

10  pandemic -- or caused the issue of hoarding the PPE.  The FSIA

11  has and the law around the FSIA have procedural steps to

12  follow.  It's not -- I would agree with defendants, probably,

13  if they would say that it's not just a stay -- it's not just

14  about a default judgment.  The Court would have to be satisfied

15  that it has both subject matter and personal jurisdiction, and

16  that one of the exceptions to the FSIA applies, like we pled in

17  our complaint.  But I mean it is -- there is a procedural

18  process to follow.

19      THE COURT:  You mean for service.

20      MR. MOORE:  For proving that service has been

21  accomplished, for showing that a default should be granted, but

22  it would take briefing.

23      THE COURT:  Yeah.

24      Now, in your briefing -- when you say "it would take

25  briefing," what do you have in mind?

```
 1              MR. MOORE:  We are -- I don't want to put words in the
 2    defendants' mouths and PetroChina's lawyers' mouths, but I
 3    believe that they would oppose us getting a default.  And so we
 4    would have to show that we have satisfied the FSIA, and that we
 5    have qualified under an exception to the FSIA, and that service
 6    has been complete, and, therefore, the Court could enter a
 7    default against those two defendants.
 8              THE COURT:  All right.  Now, you mentioned earlier
 9    that the case doesn't really make sense without these
10    defendants.  Am I understanding what you said correctly?
11              MR. MOORE:  Yes, sir.
12              THE COURT:  Okay.  So to your mind, it doesn't make
13    sense to proceed against the defendant who's here, unless I am
14    going to make a finding that these other defendants were
15    properly served and are properly here as well.  Is that
16    correct?
17              MR. MOORE:  Yes, sir.
18              THE COURT:  Okay.  So then hearing that, I think what
19    makes the most sense -- and I'll hear from the defendant in a
20    moment -- is to leave the case closed, because we're not
21    actually going to proceed on the merits of the litigation yet,
22    to have you file your motion for default, and then to have them
23    respond, and then I can adjudicate that question on its merits.
24    And if I agree that they've been served and that there's
25    subject matter jurisdiction and personal jurisdiction,
```

1   et cetera, I can grant your motion.  And presumably at that

2   point, the case would end, because you want to have nothing to

3   do with this one remaining defendant who's appeared, is that

4   correct?

5           MR. MOORE:  That's not necessarily true, because we

6   believe -- and I think we pled in our complaint -- that there's

7   connection between the Chinese-based defendants, the state

8   defendants, and PetroChina America.  So they are a part of

9   this.  And I'm sure they're going to want to defend themselves.

10          THE COURT:  So what happens if I find -- if I enter

11  default judgment against the other defendants, what then

12  happens to the case against this defendant?  Then I would

13  reopen the case, they would file their motion to dismiss, and

14  we'd proceed in a normal lawsuit against this defendant, is

15  that how you see it?

16          MR. MOORE:  Yes, Your Honor.  Because it's not just

17  that it's the default judgment in having to see what the

18  exceptions that apply under the FSIA, that would lead to a

19  default that would also, I believe, support our allegations of

20  the ties between the two, which I assume they will argue

21  against, but that it would play into how PetroChina defends

22  itself.

23          THE COURT:  Now, what happens if, in reviewing your

24  motion and their response, I disagree and deny your motion for

25  default judgment?  Then what happens to the case?

```
 1          MR. MOORE:  That's a good question, Your Honor.  I
 2   would say that when we have to proceed against PetroChina
 3   America -- but I think it would depend on how you rule and how
 4   you find based on our papers.
 5          THE COURT:  Okay.  So maybe the case goes away at that
 6   point and maybe it doesn't, basically.
 7          MR. MOORE:  It's possible, yes.
 8          THE COURT:  All right.
 9          Mr. Patel, let me hear from you.
10          MR. PATEL:  Sure.
11          Your Honor, I think there's probably three things that
12   we need to consider here.
13          The first is, going back to the service issue, I think
14   we need to at least make sure that we're all operating under
15   the same baseline assumption.  And what I mean by that is
16   plaintiffs need to make a decision about service of process.
17   They've claimed that they have served both the People's
18   Republic of China and the communist -- the Chinese Communist
19   Party under the FSIA, which applies to foreign sovereigns.
20          But at the same time, in various filings, they've also
21   argued that the CCP, or the communist -- the Chinese Communist
22   Party, isn't a foreign sovereign.  And so if that's true, then
23   they need to be served under the Hague and not under the FSIA.
24          And so we need to first level set I think, Your Honor,
25   and understand what it is that plaintiffs are arguing.  Has
```

1   service been effectuated under the FSIA, in which case, they

2   agree that both the PRC and the CCP are both foreign

3   sovereigns; or is the CCP in their mind not a foreign

4   sovereign, in which case there hasn't been service under the

5   Hague for the CCP.

6          So that's the first thing, I think, Your Honor, that

7   we need a little bit of level setting on to determine --

8          THE COURT:  We need a little bit of what?

9          MR. PATEL:  A level setting on to make sure we fully

10   understand what it is that --

11         THE COURT:  Why wouldn't that just be something that

12   they lay out in their motion?

13         MR. PATEL:  So that's certainly something that they

14   can do in their motion, and then we'd have an opportunity to

15   respond.

16         THE COURT:  They're going to file a -- what he's

17   proposing, which I think makes sense, is keep the case stayed,

18   because there's no reason -- the case might go away, right?  So

19   let's litigate this question, this initial preliminary question

20   that we all think is important.  He'll file his motion.

21         Among the many things he's going to advocate for is

22   that service was effectuated, presumably, based on what he said

23   today, under the FSIA.  Am I correct, Mr. Moore?

24         MR. MOORE:  Yes.

25         THE COURT:  So we've already -- whatever the word

1    was -- level setted.  And so that's an issue that's, I think,

2    not really an impediment to doing it the way I've proposed.

3         What's the second issue?

4         MR. PATEL:  Sure.  So I think we can -- with that in

5    mind, if we're proceeding under the -- under what Mr. Moore

6    just said, that they believe that service had been effectuated

7    under the FSIA, both foreign sovereigns, I think, Your Honor,

8    understanding what it is that you're proposing for the briefing

9    that we're looking at -- is it briefing for default judgment?

10   Or is it briefing related to whether service has been

11   effectuated under the FSIA, whether there's some exception?

12   Because I think it -- sort of looking at it in an order of

13   priorities, the briefing under the FSIA would precede the

14   default judgment, and as it relates to the default judgment,

15   there are then additional requirements.

16        Once there's -- once service -- if service has been

17   effectuated, then default judgment can only be granted, which

18   I'm sure Your Honor knows, that if the Court determines that

19   the parties who might not be there, the PRC and the CCP --

20   these acronyms are going to kill me, I apologize, Your Honor --

21   that they would -- the Court would find that on the merits -- a

22   finding against them on the merits as it relates to the claims

23   and allegations.  And so I think in our mind, if what Your

24   Honor is proposing, if I'm correct, is briefing related to the

25   FSIA, we don't object to that at all.  We think that's the

1    right way to proceed.

2            THE COURT:  Yeah.  Okay.  I take your point.  I mean

3    in the regular course, when we get a motion for default

4    judgment -- let's back up.  A motion for clerk's default is

5    filed.  The clerk will look on the docket to see if service has

6    been effectuated to their mind, and they issue -- they either

7    grant it or deny it in a nonbinding way, right?  I ultimately

8    will have the opportunity to decide that.

9            But let's just hypothetically assume that the clerk

10   then grants the motion for clerk's default, which starts the

11   14-day clock for -- they'll file their motion for final default

12   judgment, let's say, in a regular case, and then no response

13   comes in.  So what do I do with the motion for default

14   judgment?  I can't just grant it as a matter of course.  What I

15   do is, we look to see if service has truly been effectuated; we

16   look to see if we have subject matter jurisdiction; we look to

17   see if we have personal jurisdiction; and we look to see if we

18   have venue, all as preliminary questions, based on the

19   allegations of the complaint, because usually in a default

20   judgment scenario -- not always, but usually -- we only have

21   the complaint to go on.  So that's the first thing we do.

22           Then we still can't grant default judgment because

23   then, like you I think intimated, we have to go through

24   Count 1, lay out the elements, lay out the allegations that

25   have been made as to each element, and see whether it's

1   sufficient to satisfy that element.

2         Now, of course, all inferences are at this point being

3   drawn for the moving party, because nobody has said otherwise

4   or contested them.  So if the allegation is there, then

5   assuming it's not a frivolous or implausible allegation, or a

6   conclusory one, generally we accept it at that phase.  And we

7   do that for Count 2, Count 3, Count 4, et cetera, until we've

8   resolved all the counts.

9         So I guess what I'm saying is, that's how we do it in

10  the regular course.  And I'm proposing that we kind of do it

11  that way here, where we can have a motion filed by him where he

12  briefs all of these issues; he tries to convince us that

13  service was proper under the FSIA; that there's subject matter

14  jurisdiction under the FSIA because exception C applies, or

15  whatever it is; that we have personal jurisdiction for one or

16  another reason, et cetera; that venue is proper; and that on

17  the merits, they've satisfied each of the elements of all of

18  the counts.  And then you can respond in opposition, and

19  they'll get a chance to reply.  And then I can either grant or

20  deny the motion.

21        I could also grant it in part, I suppose.

22        What's -- any problem with that?

23        MR. PATEL:  So I think, Your Honor, generally

24  speaking, if we're doing it in the way that you've laid out,

25  that makes sense.  I think it --

14

```
 1          THE COURT:  One other thing.  Just another thought, by

 2   the way.  If we thought this was more efficient, which actually

 3   maybe it is, as I'm thinking about it, maybe it makes sense

 4   just to have a motion on whether service has been effectuated

 5   properly under the FSIA, a simple motion with one issue, a

 6   response, a reply, I can rule on that.  Because if I deny that

 7   motion, then we probably never need to get to any of the other

 8   things, and you all can save a lot of money briefing that.

 9          What do you think about that, Mr. Patel?

10          MR. PATEL:  Exactly.  That's what I was going to

11   propose, looking at --

12          THE COURT:  Well, hold on, one second.

13          What about you, Mr. Moore?

14          MR. MOORE:  No, I agree, I agree.

15          THE COURT:  Let's do it that way then.  That actually

16   seems like a more efficient way to handle it.

17          So why don't we just have one motion, and you can

18   label it "motion for finding that service has been properly

19   effectuated" or something like that.  And you can file that

20   motion.

21          How much time do you need for that, Mr. Moore?

22          MR. MOORE:  Could I have 14 days, just because it's a

23   busy time?

24          THE COURT:  I was going to give you 21, but 14 is

25   fine.
```

```
 1              MR. MOORE:  I'll take the 21, Your Honor.  I'll take
 2    the 21.
 3              THE COURT:  No, now you get seven.
 4              (Laughter)
 5              THE COURT:  All right.  Twenty-one is fine.
 6              MR. MOORE:  Thank you.
 7              THE COURT:  Where does that put us, Lulu?
 8              LAW CLERK:  October 11th.
 9              THE COURT:  October 11th.
10         So by October 11th, which is a Wednesday, you'll file
11    your motion for me to find that service has been properly
12    effectuated.  And then the defense will get two weeks to
13    respond to that.  Of course, if you needed more time, just call
14    him.  If he's not opposed, file a motion for an extension, and
15    I'll freely grant that motion.  Then, Mr. Moore, you'll get a
16    chance to reply, and then I'll rule on that issue.
17         If I grant the motion, then, of course, we'll have to
18    proceed with -- you'll file a motion for clerk's default.  And
19    I would tell you that in the order.  I would say, Hey, within
20    seven days, file a motion for clerk's default.  Then you'll
21    file your motion for default final judgment procedures, and
22    we'll go from there.  And then we'll have a whole other
23    briefing fight on FSIA jurisdiction, then personal
24    jurisdiction, and of course the merits.
25              If I deny the motion, though, that's it.  Those two
```

1    defendants are out.

2           And then you'll have to decide -- I'll probably give

3    you maybe two weeks, Mr. Moore, to decide what you want to do

4    with the third defendant.  Are you just going to cut them loose

5    if I do that, or are you going to want me to reopen the case

6    and try to proceed with active litigation against them?  Either

7    is fine.  You'll just have a circumscribed timetable to let me

8    know.

9           Does that work for you, Mr. Moore?

10          MR. MOORE:  It does.  Thank you, Your Honor.

11          THE COURT:  Mr. Patel?

12          MR. PATEL:  Yes, Your Honor.

13          THE COURT:  All right.

14          Anything else I can help you with, Mr. Moore?

15          MR. MOORE:  Not today.  Thank you.

16          THE COURT:  Mr. Patel?

17          MR. PATEL:  Not today.  Thank you, Your Honor.

18          THE COURT:  Mr. Patel, are you going to let Mr. Soto

19   talk today or is he just on probation?  What's up with that?

20          *(Laughter)*

21          MR. PATEL:  He's supervising, Your Honor.

22          THE COURT:  All right.

23          MR. PATEL:  Making sure I don't go off the rails.

24          THE COURT:  Okay, folks.  Nice to see you all.  Take

25   care.  And I'll look forward to reviewing your papers.

```
 1              MR. MOORE:  Thank you, sir.

 2              MR. PATEL:  Thank you.

 3              THE COURT:  All right.

 4              MR. MOORE:  Bye-bye.

 5              (The Judge exited the Zoom session)

 6              (Proceedings concluded at 2:53 p.m.)

 7                          -  -  -  -  -

 8

 9

10

11

12

13

14

15

16

17

18                   C E R T I F I C A T E

19    I certify that the foregoing is a correct transcript from

20    the record of proceedings in the above-entitled matter.

21

22
        /S/Francine C. Salopek                9-25-23
23    Francine C. Salopek, RMR-CRR         Date
      Official Court Reporter
24

25
```

LAW CLERK: [1] 15/8
MR. MOORE: [22]
MR. PATEL: [12]
THE COURT REPORTER: [1] 3/4
THE COURT: [36]

/

/S/Francine [1] 17/22

**1**

10-80604-CIV-RKA [1] 1/4
11th [3] 15/8 15/9 15/10
12-4 [1] 2/10
1200 [1] 2/7
1395 [1] 2/6
14 [1] 14/24
14 days [1] 14/22
14-day [1] 12/11
1608 [1] 5/9
18 [1] 4/5
19 [1] 4/22

**2**

20 [2] 1/8 3/1
20-CV-80604 [1] 3/6
2020 [1] 3/24
2023 [3] 1/8 3/1 4/11
21 [3] 14/24 15/1 15/2
23 [1] 17/22
272789 [1] 2/3
2:31 [2] 1/9 3/1
2:53 [1] 17/6

**3**

30 [1] 4/3
301-3276 [1] 2/11
305 [1] 2/11
3276 [1] 2/11
33128 [1] 2/11
33131 [1] 2/7
33427 [1] 2/3

**4**

400 [1] 2/10

**8**

80604 [1] 3/6
85 [1] 4/16

**9**

9-25-23 [1] 17/22
91 [1] 5/11

**A**

above [1] 17/20
above-entitled [1] 17/20
accept [2] 5/2 13/6
accomplished [1] 6/21
acronyms [1] 11/20
Act [1] 4/1
action [2] 3/17 4/14
adjudicate [1] 7/23
advocate [1] 10/21
Affairs [3] 4/15 4/18 5/8
afternoon [4]
agree [6]
agreement [1] 5/20

AHARON [2] 1/7 3/5
al [3] 1/7 1/10 3/6
al. [1] 3/5
allegation [2] 13/4 13/5
allegations [5]
alleging [1] 3/20
Altman [1] 1/18
Amended [1] 4/13
America [2] 8/8 9/3
America, [1] 5/15
America, Inc [1] 5/15
answer [1] 6/2
apologize [1] 11/20
APPEARANCES [1] 2/1
applies [3] 6/16 9/19 13/14
apply [1] 8/18
argue [2] 5/6 8/20
argued [1] 9/21
arguing [1] 9/25
assume [2] 8/20 12/9
assuming [1] 13/5
assumption [1] 9/15
Avenue [2] 2/6 2/10

**B**

baseline [1] 9/15
Beijing [2] 4/13 4/17
believe [5]
Berman [3] 2/2 2/2 3/8
Boca [1] 2/3
Box [1] 2/3
Brickell [1] 2/6
briefing [10]
briefs [1] 13/12
busy [1] 14/23
bye [2] 17/4 17/4
Bye-bye [1] 17/4

**C**

call [1] 15/13
caused [2] 6/9 6/10
CCP [6]
certifies [1] 5/8
certify [1] 17/19
cetera [3] 8/1 13/7 13/16
chance [2] 13/19 15/16
China [7]
China's [2] 4/25 5/7
China-based [1] 5/9
CHINESE [7]
Chinese-based [1] 8/7
circumscribed [1] 16/7
CIV [1] 1/4
claim [1] 5/18
claimed [1] 9/17
claims [1] 11/22
class [3] 3/17 3/20 4/13
clerk [3] 4/12 12/5 12/9
clerk's [4]
clock [1] 12/11
closed [1] 7/20
colleagues [1] 3/14
communist [6]
complaint [6]
complete [1] 7/6
computer [1] 1/25
concluded [1] 17/6
conclusory [1] 13/6

Conference [1] 1/17
connection [1] 8/7
contested [1] 13/4
Convention [1] 3/25
convince [2] 5/22 13/12
Count [4]
Count 1 [1] 12/24
Count 2 [1] 13/7
Count 3 [1] 13/7
Count 4 [1] 13/7
counts [2] 13/8 13/18
court [10]
Courthouse [1] 2/10
COVID [1] 4/22
COVID-19 [1] 4/22
CRR [2] 2/8 17/23
cut [1] 16/4
CV [1] 3/6

**D**

damages [1] 3/20
Daniel [2] 2/5 3/14
Date [1] 17/23
decide [3] 12/8 16/2 16/3
decision [1] 9/16
default [24]
defend [1] 8/9
defendant [8]
defendants [16]
defendants' [1] 7/2
defends [1] 8/21
defense [1] 15/12
delivered [1] 4/21
delivers [1] 5/7
deny [5]
Department [4]
depend [1] 9/3
determine [1] 10/7
determines [1] 11/18
diligently [1] 4/8
diplomatic [1] 4/19
disagree [1] 8/24
disagrees [1] 5/15
dismiss [1] 8/13
DISTRICT [4]
DIVISION [1] 1/3
docket [2] 4/2 12/5
doctors [1] 3/18
documents [1] 5/7
drawn [1] 13/3
dutifully [1] 4/6

**E**

ECF [4]
Edward [2] 2/4 3/14
effectuated [11]
efficient [2] 14/2 14/16
efforts [1] 4/4
element [2] 12/25 13/1
elements [2] 12/24 13/17
Embassy [3] 4/12 4/17 4/20
EMTs [1] 3/18
enter [2] 7/6 8/10
entitled [1] 17/20
equipment [1] 3/22
Esq [3] 2/2 2/4 2/5
et [7]
et al [1] 3/6

**E**

et al. vs. the [1]  3/5
et cetera [3]  8/1 13/7 13/16
exception [3]  7/5 11/11 13/14
exceptions [2]  6/16 8/18
exited [1]  17/5
expressed [1]  5/1
extension [1]  15/14

**F**

Ferguson [1]  2/10
fight [1]  15/23
file [11]
filed [2]  12/5 13/11
filing [1]  4/6
filings [1]  9/20
final [2]  12/11 15/21
fine [3]  14/25 15/5 16/7
firm [1]  5/1
FLORIDA [6]
focus [1]  6/4
folks [1]  16/24
foregoing [1]  17/19
foreign [9]
form [1]  4/19
Fran [1]  3/3
Francine [3]  2/8 17/22 17/23
freely [1]  15/15
frivolous [1]  13/5
frontline [1]  3/19
FSIA [19]

**G**

Gotshal [2]  2/6 3/15
grant [8]
granted [2]  6/21 11/17
grants [1]  12/10
great [1]  4/8
Group [1]  3/8
Guernsey [2]  2/5 3/14

**H**

Hague [3]  3/25 9/23 10/5
handle [1]  14/16
He'll [1]  10/20
hear [2]  7/19 9/9
hearing [2]  1/17 7/18
help [1]  16/14
Hey [1]  15/19
hoarding [2]  3/21 6/10
hold [1]  14/12
honestly [1]  6/2
Honor [17]
Honorable [1]  1/18
hope [1]  4/10
hypothetically [1]  12/9

**I**

I'll [7]
I'm [7]
I've [1]  11/2
Immunities [1]  4/1
impediment [1]  11/2
implausible [1]  13/5
inability [1]  3/24
Inc [1]  5/15
inferences [1]  13/2
informed [1]  4/12

initial [2]  4/4 10/19
interest [1]  4/8
International [1]  5/15
intimated [1]  12/23
involvement [1]  4/21
issue [8]
issues [1]  13/12

**J**

Jr [2]  2/5 2/10
Judge [4]
judgment [15]
July [1]  3/24
jurisdiction [9]

**K**

keep [1]  10/17
kill [1]  11/20
knows [1]  11/18

**L**

label [1]  14/18
laid [1]  13/24
Laughter [2]  15/4 16/20
law [3]  2/2 3/8 6/11
lawsuit [1]  8/14
lawsuits [1]  5/4
lawyers' [1]  7/2
lay [3]  10/12 12/24 12/24
lead [1]  8/18
leave [1]  7/20
letter [2]  4/15 5/5
light [1]  3/24
liked [1]  4/9
litigate [1]  10/19
litigation [5]
Lulu [1]  15/7

**M**

Manges [2]  2/6 3/15
March [1]  4/11
matter [6]
Matthew [2]  2/2 3/8
mean [5]
mechanical [1]  1/24
medical [1]  3/19
members [1]  3/21
merits [7]
MIAMI [5]
ministry [4]
moment [1]  7/20
money [1]  14/8
Moore [12]
MORIAH [1]  1/7
motion [31]
mouths [2]  7/2 7/2
moving [1]  13/3
Mr. [16]
Mr. Moore [10]
Mr. Patel [5]
Mr. Soto [1]  16/18

**N**

named [1]  3/17
national [1]  5/1
Nice [1]  16/24
nobody [1]  13/3
nonbinding [1]  12/7

normal [2]  5/25 8/14
note [2]  4/19 4/20
Notice [1]  4/14
Number [4]
Number 1 [1]  3/23
Number 18 [1]  4/5
Number 85 [1]  4/16
Number 91 [1]  5/11
nurses [1]  3/18

**O**

object [1]  11/25
October [3]  15/8 15/9 15/10
October 11th [3]  15/8 15/9 15/10
Offices [1]  2/2
Official [2]  2/9 17/23
operating [1]  9/14
opportunity [2]  10/14 12/8
oppose [2]  5/16 7/3
opposed [1]  15/14
opposition [2]  5/2 13/18
order [3]  4/4 11/12 15/19

**P**

P.A [1]  2/2
p.m [3]  1/9 3/1 17/6
P.O [1]  2/3
page [6]
page 1 [2]  3/23 4/16
page 2 [1]  4/5
page 3 [3]  5/4 5/11 5/13
pandemic [1]  6/10
papers [2]  9/4 16/25
paramedics [1]  3/18
part [3]  6/8 8/8 13/21
participate [1]  5/3
parties [1]  11/19
party [5]
Patel [7]
People's [3]  4/15 4/18 9/17
personal [6]
persuade [1]  6/3
PetroChina [4]
PetroChina's [1]  7/2
phase [1]  13/6
plaintiff [1]  3/7
plaintiffs [9]
plaintiffs' [2]  3/24 5/16
play [1]  8/21
pled [2]  6/16 8/6
point [4]
PPE [2]  3/22 6/10
Pravin [2]  2/5 3/13
PRC [3]  6/8 10/2 11/19
precede [1]  11/13
preliminary [2]  10/19 12/18
priorities [1]  11/13
probation [1]  16/19
problem [1]  13/22
procedural [2]  6/11 6/17
procedures [2]  5/24 15/21
proceed [9]
proceeding [1]  11/5
proceedings [3]  1/24 17/6 17/20
process [2]  6/18 9/16
produced [1]  1/25
proper [2]  13/13 13/16
properly [5]

**P**

propose [1]  14/11
proposed [1]  11/2
proposing [4]
protective [1]  3/22
provide [1]  4/2
proving [1]  6/20
pursuant [1]  5/8
pursue [1]  5/23
putative [1]  3/20

**Q**

qualified [1]  7/5
question [4]
questions [1]  12/18
quote [1]  4/20

**R**

rails [1]  16/23
Raton [1]  2/3
reading [1]  4/8
ready [1]  3/3
received [1]  4/17
recognize [1]  5/3
record [1]  17/20
recorded [1]  1/24
refused [1]  5/2
regular [4]
remaining [1]  8/3
removed [1]  4/1
reopen [5]
reply [4]
Reporter [3]  2/8 2/9 17/23
reports [3]  4/3 4/7 4/9
representing [1]  3/18
Republic [3]  4/15 4/19 9/18
request [1]  5/16
required [1]  4/2
requirements [1]  11/15
resolved [1]  13/8
respond [4]
response [4]
result [1]  3/21
returned [1]  5/2
reviewing [2]  8/23 16/25
RKA [1]  1/4
RMR [2]  2/8 17/23
RMR-CRR [1]  17/23
Room [1]  2/10
Roy [1]  1/18
rule [3]  9/3 14/6 15/16

**S**

Salopek [3]  2/8 17/22 17/23
satisfied [3]  6/14 7/4 13/17
satisfy [1]  13/1
save [1]  14/8
scenario [1]  12/20
second [2]  11/3 14/12
Section [1]  5/9
Section 1608 [1]  5/9
sense [7]
September [2]  1/8 3/1
SEPTEMBER 20 [1]  3/1
seriously [1]  4/25
serve [1]  3/25
served [9]
service [21]

session [2]  3/2 17/5
setted [1]  11/1
setting [2]  10/7 10/9
seven [2]  15/3 15/20
seven days [1]  15/20
side [2]  4/21 5/1
sides [1]  5/19
simple [1]  14/5
Soto [3]  2/4 3/14 16/18
SOUTHERN [1]  1/2
sovereign [3]  4/1 9/22 10/4
sovereigns [3]  9/19 10/3 11/7
sovereignty [1]  5/1
spot [1]  5/3
starts [1]  12/10
state [5]
STATES [5]
status [5]
stay [1]  6/13
stayed [1]  10/17
stenography [1]  1/24
steps [1]  6/11
stockpiling [1]  3/21
subject [4]
suffered [1]  3/20
sufficient [1]  13/1
Suit [1]  4/14
Suite [1]  2/7
summons [1]  4/13
supervising [1]  16/21
support [1]  8/19

**T**

take [6]
talk [1]  16/19
talking [1]  4/22
tell [1]  15/19
Thank [6]
think [23]
thinking [1]  14/3
thought [2]  14/1 14/2
ties [1]  8/20
time [4]
timetable [1]  16/7
transcript [3]  1/17 1/24 17/19
transmitted [1]  4/13
tries [1]  13/12
true [2]  8/5 9/22
truly [1]  12/15
Twenty [1]  15/5
Twenty-one [1]  15/5
two weeks [2]  15/12 16/3

**U**

U.S [1]  2/10
U.S. [3]  4/11 4/17 4/20
U.S. Department [1]  4/11
U.S. Embassy [2]  4/17 4/20
ultimately [1]  12/7
understand [2]  9/25 10/10
understanding [2]  7/10 11/8
UNITED [5]
unless [1]  7/13
us [3]  7/3 13/12 15/7

**V**

venue [2]  12/18 13/16
verve [1]  4/9

vexatious [2]  4/22 5/4
violated [1]  4/25
vital [1]  6/8
vs. [1]  3/5

**W**

we'd [2]  8/14 10/14
WEDNESDAY [2]  2/13 15/10
weeks [2]  15/12 16/3
Weil [2]  2/6 3/15
who's [5]
Wilkie [1]  2/10
word [1]  10/25
words [1]  7/1
work [1]  16/9
workers [1]  3/19

**Z**

Zoom [3]  1/17 3/2 17/5