UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MORIAH AHARON, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CHINESE COMMUNIST PARTY, et al., <br><br> Defendants. | Civil Action No. 9:20-cv-80604-RKA |

**DEFENDANT PETROCHINA INTERNATIONAL (AMERICA), INC.'S
OBJECTIONS TO REPORT AND RECOMMENDATION**

At its core, Plaintiffs' alleged harm is not that they paid a premium for personal protective equipment ("PPE") because of alleged PPE stockpiling by the People's Republic of China (the "PRC") and the Communist Party of China (the "CCP," and together with the PRC, the "Foreign Defendants"). As alleged by Plaintiffs, their core harm is the contraction or fear of contraction of COVID-19 because of the alleged mishandling of COVID-19 by the Foreign Defendants.

But foreign states are presumptively immune from suit under the Foreign Sovereign Immunities Act ("FSIA") unless a codified exception applies. Plaintiffs argue that the commercial exception applies here. That exception provides jurisdiction when the action is *based upon* an act in connection with *a commercial activity* of the foreign state elsewhere that *causes a direct effect in the United States*. Plaintiffs' failure to meet any one of the above requirements renders the exception inapplicable. Plaintiffs' claims fail each requirement.

First, PetroChina does not fall under the FSIA's definition of a foreign state or an agency or instrumentality of a foreign state. An entity is defined as an agency or instrumentality of a foreign state *only* if, in addition to meeting other requirements, it is not a citizen of a state of the

United States. PetroChina is a citizen of New Jersey and thus cannot be considered an agency or instrumentality of a foreign state.

Second, this case is not based upon any alleged anti-competitive injury. Plaintiffs' case is a personal injury tort action masked as antitrust litigation to manufacture jurisdiction under the commercial activity exception. Plaintiffs' alleged harm is contraction, or fear of contraction, of COVID-19 because they were purportedly unable to obtain PPE.[1] The commercial activity exception requires this Court to look at what actually harmed the Plaintiffs; that is the gravamen of their claims. Here, the gravamen of the Plaintiffs' core harm is the alleged mishandling of COVID-19—a sovereign, not commercial, act—and any alleged resulting COVID-19 infections. Plaintiffs themselves allege that "95% of [COVID-19] infections" (*i.e.*, 95% of the core harm alleged by Plaintiffs) "could have been prevented" had the Foreign Defendants handled the COVID-19 pandemic differently. But the Foreign Defendants' policy judgments and actions in response to an unprecedented health crisis within their own borders are the very definition of sovereign activity.

Third, Plaintiffs' claims were not in connection with commercial activity. Even if the alleged PPE stockpiling were relevant to the analysis, binding Eleventh Circuit precedent requires the Court to consider the context in which any alleged commercial activity occurred. Here, any alleged PPE stockpiling occurred in the context of the Foreign Defendants' response to a global pandemic, which is sovereign activity. And, under the commercial activity exception, the key inquiry is whether a sovereign was acting as a private market participant or a regulator of a market (*i.e.*, a sovereign). If the latter, the FSIA's presumption of immunity applies. The alleged taking

---

[1] *E.g.*, First Am. Compl. ¶¶ 7–10, 12–15 (examples of Plaintiffs' allegations that they were injured because they contracted or feared contracting COVID-19 by being unable to obtain PPE) [ECF No. 19] ("Amended Complaint").

over of PPE factories by the Foreign Defendants is not something that a private market participant can do; it is the act of a sovereign, acting in its capacity as a sovereign.

Fourth, any effect on Plaintiffs (if any) was far too attenuated to satisfy the direct effect requirement. The Foreign Defendants' alleged actions could not have caused a *direct effect* in the United States because there were countless intervening events, such as the decision of infected individuals to travel to the United States, the panic buying of PPE, states stockpiling PPE, and other factors that led to COVID-19 reaching the United States.

The Magistrate Judge ignored all of the above. Instead, he based his findings almost entirely on a non-binding, out-of-circuit opinion that conflicts with *binding* Eleventh Circuit precedent.

If the Magistrate Judge's reasoning were adopted, the United States or the CDC could be subject to suit in foreign nations based on how they responded to COVID-19, or any other pandemic or global crisis. Such a lawsuit would surely contravene international principles of sovereign immunity.

Congress, through the FSIA, has expressly limited the authority of federal courts to hear disputes involving foreign sovereigns. Accepting unsupported allegations of a complaint because a foreign defendant failed to appear would allow a court to circumvent the limited authority conferred by Congress and encourage artful pleading. That cannot be the case. Indeed, that is why the FSIA has heightened requirements for obtaining default judgment against sovereign defendants, and why subject matter jurisdiction may be raised by any party at any time, and including by the Court *sua sponte*. Therefore, it was improper for the Magistrate to cursorily address the issue of sovereign immunity by relying solely on the allegations in the Amended Complaint.

To be sure, PetroChina is not arguing on behalf of the CCP or the PRC. As stated in its Response [ECF No. 122 at 2–3], a denial of Plaintiffs' Motion [ECF No. 116] could be case dispositive for PetroChina. PetroChina's goal is simply to equip the Court with the relevant facts and applicable law to ensure that it is properly applied to the facts and circumstances of this case. Critically, regardless of PetroChina's Response, the Magistrate Judge cannot ignore binding Eleventh Circuit precedent. Nor can he ignore the facts of this case.

## BACKGROUND

Plaintiffs' Motion is currently before the Court in connection with Plaintiffs' request for default judgment against the Foreign Defendants. In the Motion, Plaintiffs argued that its claims against the Foreign Defendants fall within the noncommercial tort and commercial activity exceptions of the FSIA, and therefore the Foreign Defendants are not immune from suit. [ECF No. 116 at 6, 14.] With the Court's express permission due to the implications of the Motion, noting "if I deny it, case is over," [Oct. 10, 2023 Hr'g Tr. at 10], PetroChina filed its Response to the Motion on January 19, 2024. In its Response, PetroChina argued that neither exception applies because the gravamen of Plaintiffs' case is the alleged mishandling of COVID-19, which is a purely sovereign activity. This Court referred the Motion to Magistrate Judge Reinhart on October 22, 2024. [ECF No. 129.] Magistrate Judge Reinhart issued the Report and Recommendation on November 25, 2024. [ECF No. 130.]

## LEGAL STANDARD

Under the FSIA, foreign sovereigns are presumptively immune from suit, unless an exception applies. *Santivanez v. Estado Plurinacional De Bolivia*, 512 Fed. App'x 887, 888 (11th Cir. 2013) (citation omitted). The FSIA "***must*** be applied by the District Courts in every action against a foreign sovereign, since subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity." *Verlinden B.V. v. Cent. Bank*

4

*of Nig.*, 461 U.S. 480, 493–94 (1983) (emphasis added). Put differently, a district court must address the issue of sovereign immunity under the FSIA *sua sponte*, even if not raised by any party. *See id.*; *see also Santivanez*, 512 Fed. App'x at 888 (affirming Judge Huck's *sua sponte* dismissal of a claim against Bolivia on FSIA immunity grounds); *accord Murphy v. Republic of Panama*, 751 F. Supp. 1540, 1541 (S.D. Fla. 1990) ("A district court simply 'cannot enter a default judgment automatically upon failure or refusal of a foreign sovereign to appear after being served as required by the [FSIA].'") (citation omitted).

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). This de novo review includes both conclusions of law and fact made by a magistrate judge. *See id.* advisory committee's note ("The term 'de novo' signifies that the magistrate's findings are not protected by the clearly erroneous doctrine."); *Jackson v. S. Title Holding Co. LLC*, 2022 WL 21747286, at *1 (M.D. Fla. Sept. 1, 2022) ("The Court reviews de novo the Magistrate Judge's proposed findings of fact and legal conclusions to which Plaintiff objected.") (citation omitted); *see also Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019) ("When a party fails to raise a proper objection to the magistrate judge's report and recommendation, that party waives its right to review findings of facts and legal conclusions on appeal unless there was plain error.").

## OBJECTIONS

PetroChina objects to the Report and Recommendation's finding that PetroChina is an agent or instrumentality of a foreign sovereign, as well as the finding that the commercial activity exception applies to Counts VI–IX of the Amended Complaint.

**I.     PetroChina Is Not an Agency or Instrumentality of a Foreign Sovereign.**

In the Report and Recommendation, the Magistrate Judge found that PetroChina was an "agency or instrumentality of a foreign state" (28 U.S.C. § 1603(b)) because PetroChina (1) is a

5

separate corporation from a foreign state and (2) is owned by a foreign state or political subdivision thereof. R. & R. at 8. While those are two of the prerequisites for an entity to be considered an agency or instrumentality of a foreign state, there is a third requirement that the Magistrate Judge entirely ignored.

The third requirement that must be met before finding that an entity is an agency or instrumentality of a foreign state is that it must be "neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country." 28 U.S.C. § 1603(b)(3). Under Section 1332(c), PetroChina is a citizen of New Jersey because that is its place of incorporation. 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated. . . ."). PetroChina is therefore "a citizen of a State of the United States" and cannot be deemed an agency or instrumentality of a foreign state. *Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 731 (11th Cir. 2014) ("Because any organization with legal personhood would necessarily be either 'a citizen of a State of the United States . . . [or] created under the laws of any third country,' none could be an agency or instrumentality under this definition."); *Kirschenbaum v. Assa Corp.*, 934 F.3d 191, 197 (2d Cir. 2019) (finding that an entity was not an agency of a foreign state in part because it "is a citizen of a state (New York) within the meaning of § 1332(c)").

Therefore, the Court should reject the Report and Recommendation's finding that PetroChina is an agency or instrumentality of a foreign state.

**II.    The Magistrate Judge Incorrectly Found that Counts VI-IX Fell Within the Commercial Activity Exception.**

Relevant here, the commercial activity exception to sovereign immunity provides jurisdiction when an action is based upon: "an act outside the territory of the United States in connection

with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

To determine whether a claim is "based upon" commercial activity, the Court must look to the "core" of the suit, *i.e.*, the gravamen of the complaint. *See OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015). This requires the Court to consider the acts that "actually injured [Plaintiffs]." *Id.* at 35.

The phrase "in connection with" must be interpreted narrowly and in accordance with Congress' intention that the exception embrace only "commercial conduct." *E.g.*, *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006) (citing H.R. Rep. No. 94-1487, at 19 (1976)). "[A]cts are 'in connection' with . . . commercial activity [if] there is a 'substantive connection' or a 'causal link' between them and the commercial activity." *Id.* (citations omitted).

"To be direct, an effect must follow as an ***immediate consequence*** of the defendant's activity." *Guevara v. Republic of Peru*, 608 F.3d 1297, 1309 (11th Cir. 2010) (citation and internal quotation marks omitted) (emphasis added). The Eleventh Circuit has framed this analysis by asking whether the "effect [was] sufficiently direct and sufficiently in the United States" such that sovereign immunity should be disregarded and heard by a court in the United States. *Id.* (citations and internal quotation marks omitted).

In finding that Counts VI-IX fell within the commercial activity exception, the Magistrate Judge completely ignored binding Eleventh Circuit precedent, Plaintiffs' own admissions, and the "in connection with" language in the FSIA. The Magistrate Judge also failed to perform any meaningful analysis as to whether Plaintiffs' alleged harm was an immediate consequence of the Foreign Defendants' alleged actions.

        1.      <u>The Report and Recommendation Incorrectly Found that Counts VI-IX Are Based on Commercial Activity.</u>

In finding that Plaintiffs' PPE claims fell within the commercial activity exception, the Magistrate Judge relied entirely on the Eighth Circuit's decision in *Missouri ex rel. Bailey*, 90 F.4th 930 (8th Cir. 2024). R. & R. at 12–13. In fact, its analysis consists largely of block quotes from the Eighth Circuit's opinion. *Id.*

On top of being non-binding, *Missouri ex rel. Bailey* is not persuasive authority and contradicts Eleventh Circuit precedent. <u>First</u>, it failed to address[2] that the alleged PPE hoarding cannot be separated from the alleged response to and handling of the COVID-19 pandemic. <u>Second</u>, the Eighth Circuit's finding that taking over factories and restricting the export of PPE was commercial activity, directly contradicts Eleventh Circuit precedent. *Sequeira v. Republic of Nicaragua*, 815 F. App'x 345, 348–49 (11th Cir. 2020) (commercial activity exception did not apply to Nicaragua's sale of meat products because it arose from the taking of land, a sovereign act); *Chisholm & Co. v. Bank of Jamaica*, 643 F. Supp. 1393, 1401 (S.D. Fla. 1986) (noting that "[t]he regulation of imports and exports is a sovereign prerogative").

The Magistrate Judge's error in relying solely on *Missouri ex rel. Bailey* is compounded by the failure to address Plaintiffs' own allegations that they were harmed by contracting COVID-19, and the allegation that "95% of infections could have been prevented" had the Foreign Defendants properly responded to COVID-19. Am. Compl. ¶ 123; *OBB Personenverkehr AG*, 577 U.S. at 35 (noting that the gravamen of a claim are the acts that "actually injured [Plaintiffs]"). In other words, Plaintiffs allege that their injuries might all have been prevented had the Foreign

---

[2] Apart from its own distinct interest in the outcome of the Motion, PetroChina submitted its Response and submits this Objection so that all key issues are presented to the Court for consideration, unlike in the Eighth Circuit in *Missouri ex rel. Bailey*.

Defendants exercised their sovereign prerogatives earlier in the COVID-19 pandemic. *See OBB Personenverkehr*, 577 U.S. at 35–36 ("[T]here is nothing wrongful about the sale of the Eurail pass standing alone. Without the existence of the unsafe boarding conditions in Innsbruck, there would have been nothing to warn Sachs about when she bought the Eurail pass. However Sachs frames her suit, the incident in Innsbruck remains at its foundation.").

The Magistrate Judge ignored this critical allegation and instead stated that Counts VI-IX can stand on their own because "the Complaint still plausibly alleges that at the time of the alleged hoarding, the world was unaware of the scope of the pandemic." R. & R. at 13. The Report and Recommendation goes so far as to say that "[w]hether Plaintiffs can meet those elements at a later stage is another question not before [the Court]." *Id.* It then improperly flipped the burden of proof onto PetroChina (after stating it cannot consider PetroChina's arguments), concluding that Petro-China "has not met its burden of showing by a preponderance of the evidence that the commercial activity exception does not apply." *Id.* at 14. But the FSIA squarely puts the burden of proof on Plaintiffs and requires them to do more than rely on conclusory allegations of their Amended Complaint.

Under the FSIA, "[n]o judgment by default shall be entered . . . against a foreign state . . . unless **the claimant establishes** his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e) (emphasis added). "Whether the plaintiff has satisfied his burden of production [with respect to subject matter jurisdiction] is determined by looking at 'the allegations in the complaint [and] the undisputed facts, if any, placed before the court by the parties.'" *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313 (11th Cir. 2009) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 80 (2d Cir. 2008)). Here, Plaintiffs "merely ha[ve] filed a complaint which outlines [their] allegations." *Murphy*, 751 F. Supp. at 1541. The FSIA's heightened burden of proof

9

requires more. *Id.* The Magistrate Judge's finding that Counts VI-IX are separable from the claims relating to the handling of COVID-19 (Counts I-V) should be rejected on that basis alone.

Burden of proof aside, the Magistrate Judge's reasoning on this point assumes the answer of the very question being asked. Essentially, the Report and Recommendation finds that Counts VI-IX are separable from the claims relating to the handling of COVID-19 because the Foreign Defendants were allegedly able to corner the PPE market and use their allegedly superior knowledge to gain an advantage. R. & R. at 13. This assumes that Plaintiffs' harm is the alleged inability to obtain PPE (the very question the Magistrate Judge was asked to consider). But the harm that Plaintiffs allege is not the inability to procure PPE. Rather, the core harm alleged is the contraction of COVID-19 due to the alleged inability to obtain PPE. If there were no COVID-19, the alleged PPE stockpiling would have resulted in no harm.[3] This is a key distinction that the Magistrate Judge appears to have failed to consider.

Therefore, Counts VI-IX are based on purportedly tortious, rather than commercial, activity because they cannot be separated from the claims relating to the handling of COVID-19 (Counts I-V). The Report and Recommendation's finding to the contrary should not be adopted by this Court.

---

[3] Directorate for Financial and Enterprise Affairs Competition Committee, The Role of Competition Policy in Promoting Economic Recovery – Note by the United States, OECD, at 2 (Dec. 2, 2020), https://www.ftc.gov/system/files/attachments/us-submissions-oecd-2010-present-other-interna-tional-competitio-fora/economic_recovery_us.pdf (joint note by the Antitrust Division of the Department of Justice and the U.S. Federal Trade Commission relating to COVID-19 hoarding around the country, acknowledging that "hoarding and exploitation are not themselves antitrust violations").

      2.      <u>The Magistrate Judge Ignored the "in Connection with" Language in the FSIA.</u>

In relying on *Missouri ex rel. Bailey*, the Magistrate Judge ignored the "in connection with" language and binding Eleventh Circuit case law interpreting that language. 28 U.S.C. § 1605(a)(2).

This oversight is fatal, because even if the Magistrate Judge were correct and the alleged PPE stockpiling by the Foreign Defendants could be considered, the Eleventh Circuit has repeatedly emphasized that the "in connection with language" requires the Court to consider any purportedly commercial activity in the context in which it arose. *E.g.*, *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1177–78 (11th Cir. 2011); *Sequeira*, 815 F. App'x at 348–49.

Here, any alleged PPE stockpiling occurred in the context of the Foreign Defendants' handling of a global pandemic. All actions allegedly taken by the Foreign Defendants were in response to a fast-moving, unknown, and unprecedented situation from which national authorities around the world were trying to protect their citizens, while also seeking to avoid panic and economic collapse.

In *Odyssey*, the Eleventh Circuit concluded that Spain was "acting like a sovereign" because although a ship it operated "did transport private cargo of Spanish citizens for a charge, the transport was of a sovereign nature . . . providing protection and safe passage to property of Spanish citizens[.]" 657 F.3d at 1177–78. As in *Odyssey*, any alleged stockpiling of PPE by the Foreign Defendants would be one of many alleged actions taken when they each were "acting like a sovereign" and responding to a global pandemic. *See id.*

In *Sequeira*, Nicaragua allegedly took plaintiff's "farmland in Nicaragua and s[old] the livestock as meat products in the United States." 815 F. App'x at 347. While any individual acting as a commercial business could likewise acquire land and sell products, the Eleventh Circuit found

that Nicaragua was immune from suit and that the commercial activity exception did not apply because the sale of the meat products arose from the taking of land, a sovereign act. *Id.* at 351. Here, any alleged PPE stockpiling likewise would arise from the Foreign Defendants' response to a global pandemic, which is distinctly sovereign activity.

The Magistrate Judge failed to address the "in connection with" language entirely, and ignored binding Eleventh Circuit law that makes it clear Plaintiffs' claims do not fall within the commercial activity exception. The Court should therefore not adopt the Magistrate Judge's finding that Counts VI-IX fall within the commercial activity exception.

        3.    <u>The Report and Recommendation Improperly Found that Plaintiffs' PPE Claims Had a Direct Effect in the United States.</u>

As with the Magistrate Judge's finding that Counts VI-IX were based on commercial activity, he found that Counts VI-IX had a direct effect in the United States by relying entirely on the *Missouri ex rel. Bailey* opinion. R. & R. at 12–13. The Eighth Circuit in *Missouri ex rel. Bailey* found that the plaintiffs' claims had a direct effect in the United States because the PRC and the CCP allegedly were able to take over PPE-producing factories and corner the PPE market when they had superior knowledge about the effects of COVID-19. 90 F.4th at 939. From there, the Eighth Circuit held that "basic supply-and-demand principles tell us that these market effects depended little, if at all, 'on variables independent' of the defendants' conduct given the information asymmetry and tight timeframe that existed at the time." *Id.* (citation omitted).

But again, *Missouri ex rel. Bailey* is inapplicable. The fundamental issue with *Missouri ex rel. Bailey* is that it focused myopically on the alleged PPE hoarding. The cases cited by the Eighth Circuit in *Missouri ex rel. Bailey* highlight this, as they relate to the direct effect of certain "foreign supply restrictions . . . [on] subsequent **price increases** in the United States." *E.g.*, *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 859 (7th Cir. 2012) (emphasis added). As stated above, the

12

principal harm alleged by Plaintiffs is the contraction of COVID-19 because of the alleged inability to procure PPE, not harm from any alleged premium that they paid for PPE.

With the actual harm alleged by Plaintiffs in focus, it is clear that the Foreign Defendants' actions could not have had a direct effect in the United States. "A direct effect . . . is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption." *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994) (citation and internal quotation marks omitted). But here, there would be *many* intervening events leading to the rise in COVID-19 infections in the United States, including the decision of infected individuals to travel to the United States, the United States' decision not to close its borders, and the effectiveness of measures implemented around the world to contain the virus. All of those events, separately or collectively, could have caused Plaintiffs' alleged injuries.

Even if this Court were to focus on potential economic harms from the alleged stockpiling of PPE, the Foreign Defendants' alleged actions could not have had an "immediate" effect on any alleged PPE shortage in the United States. *Guevara*, 608 F.3d at 1309. A direct and immediate harm "has no intervening element." *Lubian v. Republic of Cuba*, 2011 WL 13186846, at *5 (S.D. Fla. Jan. 25, 2011) (quoting *Princz*, 26 F.3d at 1172). Plaintiffs fail to even allege facts showing a direct effect in the United States.

First, it is hard to imagine how Plaintiffs could have paid a premium for PPE—nor do they specifically allege they did—when the United States enacted countless anti-price gouging laws. *See, e.g.*, COVID-19 Price Gouging Prevention Act, H.R. 6472, 116th Cong. (2020) (aimed at "prohibit[ing] price gouging in connection with the public health emergency resulting from COVID–19"). Plaintiffs fail to allege a single incident where someone purchased PPE based on an alleged instruction by the Foreign Defendants, which then directly prevented a particular Plaintiff

13

from purchasing that very PPE. Indeed, Plaintiffs cannot do so. That is because any number of people could have purchased the exact PPE from the exact store that would have been purchased by a specific Plaintiff. Plaintiffs do not even allege that the Foreign Defendants bought more masks for the purposes of their alleged scheme than they otherwise would have as sovereigns to protect their own citizens.

Second, it is even more unlikely that Plaintiffs could tie any increased price to alleged actions taken in China, particularly where countless other countries and states in the United States were stockpiling PPE to protect citizens. *E.g.*, Jennifer Peltz, *States trash Masks and Pandemic Gear as Huge Stockpiles Linger and Expire*, PBS (Dec. 20, 2023).

Third, any alleged inability to obtain PPE could have been caused by the entire country being shut down during COVID-19 and other intervening factors that had nothing to do with any alleged PPE stockpiling by the Foreign Defendants. For example, as noted by the United States International Trade Commission, "the COVID-19 pandemic disrupted maritime shipping and air freight services, leading to canceled sailings and flights, port delays, and container shortages." USITC, *The Impact of the COVID-19 Pandemic on Freight Transportation Services and U.S. Merchandise Imports* (Nov. 2021), https://www.usitc.gov/research_and_analysis/tradeshifts/2020/special_topic.html. Plaintiffs offer no explanation as to how their alleged inability to procure PPE stemmed directly from the specific alleged actions of the Foreign Defendants, as opposed to events like these shipping and port issues.

As evidenced by Plaintiffs' devotion of approximately twenty-five pages in the Amended Complaint to a discussion about "several theories" as to how the virus originated and spread, there are simply too many intervening events to find that any economic harm from the alleged stockpiling of PPE was an immediate consequence of the alleged actions of the Foreign Defendants.

Sovereign immunity principles would be shattered by the Magistrate Judge's recommended outcome, which would allow the United States to be held accountable by a foreign nation for its own decisions and responses to a once-in-a-lifetime pandemic. The analysis should not change simply because of any failure to appear. This is especially true here where the Court has an obligation to addresses *sua sponte* whether it has subject matter jurisdiction. *Santivanez*, 512 Fed. App'x at 889.

## **CONCLUSION**

PetroChina objects to the findings in the Report and Recommendation that PetroChina is an agency or instrumentality of a foreign state, and that Counts VI–IX fall within the commercial activity exception. For the reasons set forth herein, PetroChina is not an agency or instrumentality, and the commercial activity exception does not apply to Counts VI-IX, and the Court should reject those findings.

Dated: January 3, 2025

Respectfully submitted,

*/s/ Pravin R. Patel*
Pravin Patel (FBN 0099939)
Daniel P. Guernsey (FBN 001018031)
Pravin.Patel@weil.com
Daniel.Guernsey@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
(305) 577-3100 (Telephone)
(305) 374-7159 (Facsimile)

*Counsel for Defendant PetroChina International (America), Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was filed electronically with the Clerk of the Court using CM/ECF on January 3, 2025. As such, the foregoing was served electronically upon all counsel of record.

*/s/ Pravin R. Patel*
Pravin Patel (FBN 0099939)
Pravin.Patel@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
(305) 577-3100 (Telephone)
(305) 374-7159 (Facsimile)

*Counsel for Defendant PetroChina International (America), Inc.*