UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MORIAH AHARON;
JORDAN G. KUPPINGER, M.D.;
DAMON J. DETESO, M.D.;
ROSANNA CARUSO;
CHRISTOPHER PAYTON;                            CASE NO. 9:20-cv-80604-RKA
LEE ANGIOLETTI;                                CLASS ACTION
MARIANGELLA MANNING;                           JURY TRIAL DEMANDED
LYNNORA VASQUEZ; and
REBECCA MADDEN, each on
behalf of themselves, and all those
similarly situated,

Plaintiffs,

v.

CHINESE COMMUNIST PARTY;
PEOPLE'S REPUBLIC OF CHINA; and
PETROCHINA INTERNATIONAL
(AMERICA), INC.

Defendants.
_____/

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND
RECOMMENDATION REGARDING SUBJECT MATTER JURISDICTION**

Plaintiffs, by and through undersigned counsel, hereby respectfully file their objections to Magistrate Judge Reinhart's Report and Recommendation (the "Report"), [DE 130], as to Plaintiffs' Motion for finding exceptions to immunity of the Court's subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, *et seq*. (FSIA), [DE 116], and in support thereof further state:

**PRELIMINARY STATEMENT**

First, Plaintiffs clearly agree with and appreciate the Report's recommended granting of

their Motion as to finding that Defendants are not immune from subject matter jurisdiction for Counts VI through IX of Plaintiffs' Amended Complaint. [DE 19]. However, Plaintiffs do respectfully disagree with the basis for the recommendation of a denial of the Motion as to Counts I through V, or as the Report termed them, "the Tort Claims." Plaintiffs posit that perhaps some of the facts set forth in the Amended Complaint were overlooked as to both "direct and immediate effect," and "discretionary acts"; and also asks the Court to consider (or re-consider) the case law under the FSIA for "direct effect," and finding exceptions to the discretionary acts exception in 28 U.S.C. § 1605(a).

I. **The Noncommercial Tort Exception Applies and the Commercial Activity Exception Apply to the Tort Claims.**

A. *Facts for Consideration or Reconsideration*.

Plaintiffs will not re-cite all the facts set forth in their Amended Complaint or in the Report. It appears uncontested that Plaintiffs have set forth numerous alleged facts discussing the PRC's and CCP's[1] broad-based deceptive, concealing, and misleading conduct at the start of the COVID-19 pandemic, and that these alleged acts led to the worldwide pandemic. But some of the other alleged facts may have been overlooked.

For instance, in discussing direct effect (or not), the Report states that: "At least one infected individual had to travel from China to other parts of the world. And then the virus had to spread from one person to another enough to reach the United States." (Report at p. 11). That is not what the Amended Complaint alleges. The Amended Complaint expressly states that there were direct flights between Wuhan and major U.S. cities such as Los Angeles, San Francisco, and

---

[1] For the avoidance of doubt, "PRC" refers to Defendant the People's Republic of China, and "CCP" refers to Defendant Chinese Communist Party. They may also be sometimes referred to as the "China State Defendants."

2

New York, as was reported at the time.[2] (Am. Compl. ¶ 116). Therefore, an infected individual simply had to get on a plane in Wuhan and land in the United States — there was no need for anyone to travel to another country first. Moreover, the Amended Complaint extensively discusses the "airborne" nature of transmission of the virus. (*See* Am. Compl. ¶¶ 130, *et seq*.). Thus, all an infected person had to do were the involuntary acts of breathing, sneezing, or coughing.

Further, the Amended Complaint alleges that the Wuhan Institute of Virology Lab (the Lab"), which was run by the China Academy of Sciences was very much a commercial venture for China. "China wanted the lab so it could compete with the U.S. and the west and be a destination for researchers and funding." (*Id.* ¶ 44; *see also* ¶ 45). But the Lab was not just a commercial venture, it is also alleged to be a center of illegal bio-weapons research and "gain of function" manipulation of coronaviruses to make human to human transmission easier. (*E.g., id.* ¶¶ 39, 44). Finally, it is amply alleged in the Amended Complaint that China's conduct relating to the virus was egregious and clearly contrary to the precepts of humanity, and they failed to warn the United States and the world of a known danger.

B. *The noncommercial tort exception applies here.*

Plaintiffs moved for all counts to fall under the noncommercial tort exception at 28 U.S.C. § 1605(a)(5). The Report's denial that the exception exists here seems to solely and somewhat summarily focus on the safe harbor that if the conduct was part of a discretionary function by the sovereign, then the sovereign enjoys immunity. However, the Report does not seem to consider Plaintiffs' Motion arguments as to why that safe harbor does not apply here. First the Motion

---

[2] *See*, *e.g.*, *Travel Ban Halts Flights Between Wuhan and U.S., As Airports Prepare to Screen Passengers for Coronavirus*, The Washington Post, Jan. 23, 2020, *available at*:
https://www.washingtonpost.com/local/trafficandcommuting/travel-ban-halts-flights-between-wuhan-and-us-as-airports-prepare-to-screen-passengers-for-coronavirus/2020/01/23/00c1f1aa-3e22-11ea-baca-eb7ace0a3455_story.html.

addresses the Supreme Court's analysis in *Berkovitz v. United States*, 486 U.S. 531 (1988), and how both prongs of analysis failed here: that there must be no rule or law that specifically prescribes an agent/employee's action; and that the exercise of discretion must be "the kind that the discretionary function exception was designed to shield . . ." *Id.* at 536-37.[3] Plaintiffs clearly alleged that Defendants' agents and representatives in China and United States were bound to act as Defendants dictated and mandated them to act. This is referenced in the Amended Complaint by the existence of the Military-Civil Fusion (MCF). (*See* Am. Compl. ¶¶ 146–147). The MCF is a supreme law and dictate of the CCP that requires citizens and Chinese ex-pats alike to do whatever the government tells them to do, erasing any independent judgment or discretionary thought. As to the second prong, Courts have found *Berkovitz*'s second condition is met "only where the question is *not* negligence but social wisdom, *not* due care but political practicability, *not* reasonableness but economic expediency." *Cope v. Scott*, 45 F.3d 445, 450 (D.C. Cir. 1995) (internal quotations omitted) (emphasis added); *see also Usoyan v. Republic of Turkey*, 6 F.4th 31, 45 (D.C. Cir. 2021).

Finally, it is recognized under the FSIA that "there is no discretion to commit, or to have one's officers or agents commit, an illegal act." *Letelier* v. *Republic of Chile,* 488 F.Supp. 665, 673 (D.D.C., 1980), quoted with approval, *Wilhite* v. *United States,* 2020 WL 6136382 (D. Montana, Billings Div., Aug. 3, 2020). That is all the more so where the act concerned is "clearly contrary to the precepts of humanity as recognized in both national and international law." *Letelier* at 673. Again, the Report appears to not address these arguments. The Amended Complaint clearly discusses illegal acts both inside China and in the United States by China and its agents,

---

[3] Plaintiffs incorporate their Motion arguments that federal courts have found that Federal Tort Claims Act case analysis, such as in *Berkovitz*, provide guidance as to analogous sections of the FSIA. (Motion at pp. 14–17).

and indeed, the Report recognized the illegality contained in Counts VI through IX of the Amended Complaint. With the death and chaos that resulted from the pandemic, it seems hard to think of a scenario more egregious in our lifetimes. Thus, Plaintiffs posit that they have met their initial burden, and that the burden now switches to Defendants as to why the exceptions to the discretionary acts exception do not apply. (*See* Report at pp. 5-6).

> C. *There was a direct effect in the United States to find an exception under the commercial activity exception for the Tort Claims.*

Plaintiffs further argued that 28 U.S.C. § 1605(a)(2)'s commercial activity exception applied to all claims in their Amended Complaint, however the Report only agreed as to Counts VI through IX. Plaintiffs believe that the exception also applies to the Tort Claims.

As argued in Plaintiffs' Motion, under the FSIA, a "direct effect" is one that follows "as an immediate consequence of the defendant's ... activity." *Repub. of Argentina v. Weltover Inc.*, 504 U.S. 607, 618 (1992) (citation omitted). The effect must be more than "purely trivial" or "remote and attenuated," but it need not be a substantial or foreseeable effect. *Id.* Indeed, under *Weltover* and its progeny, "direct effect" is not limited to situations that display an instantaneous co-location of cause-and-effect.

In evaluating a "direct effect," courts ask: "[W]as the effect sufficiently 'direct' and sufficiently 'in the United States' that Congress would have wanted an American court to hear the case?" *Guevara v. Republic of Peru*, 608 F.3d 1297, 1309 (11th Cir. 2010) (quoting *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1351 (11th Cir. 1982) (internal citation and quotation marks omitted)). Plaintiffs posit that such a harm is one Congress would want an American court to hear. It does not appear that the Report addressed these arguments.

First, although the Report did not reach the question, Plaintiffs further posit that the genesis of the virus was rooted in either the Lab or the wet market in Wuhan, both of which exist for

commercial activity.  Moreover, Plaintiffs would further argue that the PRC's and CCP's acts in handling the virus, *i.e.* trying to suppress all information and not being proactive in stopping it, are no different than a private corporation trying to suppress bad information that might affect its stock, or not fixing problems on a production line so that unbolted door plugs in an airframe do not fly off a jet midair.

Nevertheless, whether the virus leaked from the Lab (today's dominant theory) or was a result of looking the other way at the animals sold in the wet market, it started in Wuhan and then spread exponentially, causing the havoc alleged (including the hoarding and lack of PPE), not because of affirmative acts or choices of intervening actors, but because all infected persons had to do were the involuntary acts of breathing, sneezing, or coughing.  There was no stopping these human viral bombs once set in motion, and if anything, subsequent acts outside China's borders were in effort to stop the transmission, not help it along.  Plaintiffs respectfully disagree that, as the Report states, it took several more intervening acts for hospitals to be overwhelmed, etc. (Report at p. 11).  All it took was for people to keep breathing, sneezing, and coughing, which was out of an infected person's control. And China and its agents were concurrently hoarding and manipulating the PPE market.

The spread of the virus was not a pebble thrown into the ocean.  The pandemic was no mere "ripple[...] caused by an overseas transaction" that "manage[d] eventually to reach the shores of the United States." *United World Trade, Inc.* v. *Mangyshlakneft Oil Prod. Ass'n,* 33 F.3d 1232, 1238 (10th Cir. 1994) (internal quotation marks omitted), quoted by *Trigeant Ltd. v. Petroleos De Venez., S.A.*, No. 08-80584-CIV, 2010 U.S. Dist. LEXIS 148367, slip op. at *37 (S.D. Fla. Jan. 4, 2010) (Middlebrooks, J.).  Plaintiffs here are U.S. citizens, and, even if not required under *Weltover*, Defendants' wrongful conduct foreseeably and directly resulted in the injuries that they

have suffered. It seems perplexing that a virus, likely created or manipulated in the Lab, essentially shut down the U.S. and the world in mere months, yet could be labeled as "remote and attenuated" in effect. Plaintiffs respectfully request the Court reconsider the Report's finding that the Defendants' conduct did not have a direct effect in the United States sufficient to support its Tort Claims.

## CONCLUSION

Plaintiffs agree with and support the Report's recommendation that Defendants do not enjoy immunity Counts VI through IX of the Amended Complaint and urge the Court to adopt them. However, Plaintiffs respectfully object to the recommendation that the noncommercial tort exception does not apply at all and that the commercial activity exception does not apply to the Tort Claims (Counts I through V), and ask the Court to not adopt the latter recommendations.

Dated: January 3, 2025.

**THE LAW OFFICES OF**
**BERMAN & BERMAN, P.A.**
P.O. Box 272789
Boca Raton, FL 33427
Telephone: (561) 826-5200
Fax: (561) 826-5201

By: */s Matthew T. Moore*
Matthew T. Moore, Esq.
Fla. Bar No. 70034
Primary: service@thebermanlawgroup.com
Secondary: mmoore@thebermanlawgroup.com

Case No. 20-CV-80604-RKA

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
*MORIAH AHARON, et al. v. COMMUNIST PARTY OF CHINA, et al.*
CASE NO. 9:20-cv-80604-RKA

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a true and correct copy of the foregoing was filed this January 3, 2025 using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record on the service list, including the following attorneys of record.

/s/ Matthew T. Moore
Matthew T. Moore, Esq.

*Counsel for Plaintiffs*

Matthew T. Moore
mmoore@thebermanlawgroup.com

The Law Offices of
Berman & Berman, P.A.
P.O. Box 272789
Boca Raton, FL 33427
Telephone: (561) 826-5200
Fax: (561) 826-5201


*Counsel for PetroChina International (America), Inc.*

Pravin R. Patel
pravin.patel@weil.com
Daniel P. Guernsey
Daniel.Guernsey@weil.com


Weil Gotshal & Manges
1395 Brickell Avenue
Suite 1200
Miami, FL 33131
305-577-3177
Fax: 374-7159